[No. 806.]

## H. P. PHILLIPS, Plaintiff, v. WILLIAM WELCH et al., Defendants. E. D. SWEENEY, Petitioner.

Contempt—Sufficiency of Affidavit.—The affidavit alleging that Sweeney had violated the decree in the case of *Phillips* v. *Welch:* reviewed and held sufficient to give the court jurisdiction of the subject-matter of the contempt, and of the person of the petitioner.

Inquiry upon Certiorari.—The inquiry upon the writ of certiorari cannot be extended any further than is necessary to determine whether the inferior tribunal has exceeded its jurisdiction, or has regularly pursued its authority.

Idem—Excess of Jurisdiction.—Error in judgment, in respect to a ques-

tion which the court is authorized to investigate and determine, does not constitute an excess of jurisdiction.

IDEM—AUTHORITY OF SUPREME COURT.—Whenever the inferior tribunal has regularly pursued its authority, and has not, in any respect, exceeded its jurisdiction, the authority of the supreme court in this proceeding ceases; it cannot correct any errors of law or fact not jurisdictional in their character.

CONTEMPT—HABEAS CORPUS—JURISDICTION.—When a court commits a party for a contempt, its adjudication is a conviction, and its commitment, in consequence, is execution; and no court can discharge on habeas corpus a person that is in execution by the judgment of any other court having jurisdiction of the subject-matter of the contempt.

CERTIORARI—STATUTES CONSTRUED.—In construing sections 1497 and 1503, vol 1, Compiled Laws: *Held*, that the words "has exceeded the jurisdiction of such tribunal," and "regularly pursued the authority of such tribunal," present substantially the same idea, and under neither section can any question be inquired into or decided, except that of jurisdiction.

IDEM—JURISDICTION—CONTEMPT.—Jurisdiction as applied to any particular claim or controversy is the power to hear and determine that controversy, and where a person is charged with violating the decree of a court, no other court, except the one rendering the decree can hear or determine the controversy, or punish such person if found guilty of a contempt.

CONTEMPT—JUDGMENT OF CONVICTION FINAL AND CONCLUSIVE.—A contempt of the character alleged in this proceeding is a specific substantive and distinct criminal offense, and under the constitution and laws of this state, judgment of conviction, if within the jurisdiction of the inferior court, is final and conclusive.

No EXCESS OF JURISDICTION.—The facts of this case elaborately reviewed: *Held*, that the court, in adjudging petitioner guilty of a contempt, in violating the decree and order in the suit of *Phillips* v. *Welch*, did not exceed its jurisdiction, and that this court cannot, upon the writ of certiorari, review the case upon the merits. (BEATTY, J., *dissenting*.)

ORIGINAL application for a writ of certiorari.

The affidavit for the writ of attachment against the defendant Sweeney for contempt (referred to in the opinion), was presented to the district court on the thirtieth of July, 1875. Sweeney appeared and demurred to the sufficiency of the affidavit. The demurrer was overruled, and defendant Sweeney then filed an answer denying most of the allegations contained in the affidavit. A hearing was had, and witnesses were sworn and examined touching the disputed questions. The court, after the hearing, found the facts as

stated in the opinion of the court. The judgment of the court adjudging Sweeney guilty of contempt, and entering a fine of one hundred dollars against him, was rendered August 17, 1875. From this judgment an appeal was taken to the supreme court, and there dismissed for want of jurisdiction. (11 Nev. 187.) Defendant Sweeney having (as was claimed by plaintiff), continued to violate the decree, was thereafter, to wit, in July, 1876, brought before the court, and fined in the sum of five hundred dollars. The defendant Sweeney thereupon presented to this court a petition alleging, among other things, that in adjudging him guilty of contempt, "said court exceeded its jurisdiction, and that the decision of said court, in said proceeding, was contrary to and against the evidence adduced before said court, and contrary to and against law." Upon the presentation of this petition, counsel agreed in open court that the transcript on appeal in *Phillips* v. *Welch* (11 Nev. 187), should be considered and treated as a return of the district court to the writ of certiorari.

*C. H. Belknap,* for Petitioner:

I. A party cannot be adjudged guilty of contempt for doing an act which he is not forbidden to do. (*Weeks* v. *Smith,* 3 Abbott's Prac. Rep. 211.)

If the order be ambiguous or doubtful, or fairly capable of a construction which will be consistent with the person's innocence of any intentional disrespect, the court should not interfere to punish for a contempt. Injunction orders should be made so clear, definite and precise, that every person enjoined should see clearly and distinctly just what acts are enjoined, and what are permitted.

II. The affidavit of Phillips, upon which the contempt proceeding is founded, does not state facts sufficient to give the district court jurisdiction of the subject matter. (*Batchelder* v. *Moore,* 42 Cal. 414.) It abounds in legal conclusions; it does not state a single fact by which the district court could have been informed whether a contempt had, or had not, been committed. The fact which should have been stated was the *quantity* of water, the fractional portion of

the stream, that Sweeney was actually diverting; then the district court, from such statement, could have determined whether, upon the facts stated, Sweeney was violating the decree. The affidavit of Phillips does not state facts sufficient to give the district court jurisdiction of the case of contempt. The jurisdictional facts not appearing, this court can, upon certiorari, unquestionably review the action of the district court, and determine whether it had jurisdiction of the matter. (*Pindar* v. *Black,* 4 How. Prac. 95; *Crandall* v. *Bryan,* 15 How. Prac. 48; *Whitlock* v. *Roth,* 5 How. Prac. 143; *DeNierth* v. *Sidner,* How. Prac. 419; *Vanderpool* v. *Kissam,* 4 Sandford, 715; *Blason* v. *Bruno,* 21 How. Prac. 112; *City Bank* v. *Lumley,* 28 How. Prac. 397; *Cook* v. *Roach,* 21 How. Prac. 152; *Draper* v. *Beers,* 17 Abbott Pr. 163; *Lippman* v. *Petersburg,* 10 Abbott Pr. 254.)

Sections 1497 and 1503 (compiled laws) must be considered together, and effect must be given to each, if possible; so considered, it seems clear, under the statute, that the first question to determine is under section 1497, whether the inferior tribunal had jurisdiction; and secondly, whether it has regularly pursued its authority.

In cases where petitioner has no other remedy, and where injustice would otherwise be done, the court will examine the regularity of the proceeding of the inferior tribunal, and determine whether its decision is in accordance with law. (*Swift* v. *Poughkeepsie,* 37 N. Y. 516; *People* v. *Assessors,* 39 N. Y. 88; *People* v. *Supervisors,* 51 N. Y. 442; *People* v. *Allen,* 52 N. Y. 538; *People* v. *Betts,* 55 N. Y. 600; *People* v. *Sanders,* 3 Hun. N. Y. 16; *Niblo* v. *Post,* 25 Wend. 280.)

These decisions were based upon the common law.

Our statute is in affirmance of the common law. (*Whitney* v. *Board of Delegates, &c.,* 14 Cal. 500.)

*Robert M. Clarke,* for Respondent:

I. The relief sought can only be granted in case the court pronouncing the judgment acted in a case where it had no jurisdiction to act, or, having jurisdiction, entered a judgment in excess of its jurisdiction. (Civ. Prac. Act, secs. 436, 442; *Maynard* v. *Riley,* 2 Nev. 313; *State* v. *Board of*

*Com. W. Co.*, 5 Id. 317; *Fall* v. *Humboldt Co.*, 6 Id. 100; *Mason* v. *Commissioners Ormsby Co.*, 7 Id. 398; *Hetzel* v. *Commissioners Eureka Co.*, 8 Id. 359; *C. P. R. R. Co.* v. *Placer Co.*, 43 Cal. 365; *People* v. *Elkins*, 40 Cal. 642; *Monreal* v. *Bush*, 46 Id. 79; *Barber* v. *San Francisco*, 42 Id. 631; *C. P. R. R. Co.* v. *Placer Co.*, 46 Id. 667.)

II. Sweeney had no right to use any water for any purpose as against Phillip, because the water was decreed to the land, and because he had granted the land by lease without reservation of water to others for five years. (Angell on Water Courses, secs. 6, 8, 9–92; *Vansickle* v. *Haines*, 7 Nev. 249.)

III. This particular use now claimed was arrested in the pleadings and denied by the decree, and this is conclusive of the right. (Freeman on Judgments, sec. 249; 36 Barb. 88; 37 N. Y. 59; 7 Wall. 102.)

IV. Granting the right in Sweeney which was decreed to him, that is, the use of sixteen one-hundredths parts of the water to irrigate the land; that right does not include the use made of the water, to wit: the right to divert it to Carson in pipes. (Angell, 227–28.)

*Lewis & Deal*, also for Respondent:

I. The findings and decree, in *Phillips* v. *Welch*, clearly give to Sweeney the water awarded to him only for certain purposes and uses; that is, for irrigating his land and for domestic purposes. The court finds that he is entitled to the water in connection with his land, and for certain uses mentioned. The denial of the court to allow Sweeney to divert it to be used in Carson, shows that the only use intended was on the land. If the decree only allows Sweeney to use it in a given way, or for certain purposes, he has no right to use it in any other way or for any other purpose. It would be a manifest violation of the decree to depart from its letter or its purpose.

II. The affidavit presented by Phillips is sufficient. A distinction must be made between the total absence of an averment and a defective statement. (*Treadway* v. *Wilder*, 8 Nev. 97.)

The affidavit states that said defendant Sweeney did unlawfully and intentionally divert the waters * * * in quantities largely in excess of the quantities authorized or permitted by the decree. This of itself was sufficient to give the court jurisdiction.

III. If the court had jurisdiction to punish Sweeney for contempt, that is the end of this proceeding. Nothing but jurisdiction can be inquired into. We contend that if in this case the district court had power to punish for the contempt alleged, then this court will not review the proceedings. (*Ex parte* Kearney, 7 Wheat. 38; Lord Mayor of London, 3 Wils. 188; Yates' Case, 4 John. 318; 2 Iowa, 69.)

*C. H. Belknap*, in reply:

The affidavit does not state a single fact. Whether the amount of water diverted was excessive would depend upon the amount taken out. Hence, the amount taken out, as well as the amount which Sweeney was entitled to, should be stated.

II. The fact that Sweeney in his answer upon the trial of the suit to determine the rights of the occupants of land adjoining Kings Cañon creek, set up a right to carry a portion of the stream to Carson city, which right is not affirmatively acknowledged in the judgment in that case, cannot be used as an argument in support of the theory that Sweeney has no right to divert the water to Carson city for purposes of sale.

III. The earlier cases in England and in this country, always held that upon certiorari in cases where the party has no other remedy, and where, unless the court exercised its authority there would be a failure of justice, the review under the writ would be extended to the questions of law determined by the lower court, and erroneous decisions would be corrected. These views do not conflict with the decisions heretofore made by this court. This court can, with perfect consistency, make the distinction, which the justice of the case requires.

By the Court, HAWLEY, C. J.:

E. D. Sweeney, one of the defendants in the above-entitled action, upon the same transcript and evidence that was presented in this case on appeal, (11 Nev. 187,) claims that the district court in adjudging him guilty of contempt "exceeded its jurisdiction, and that the decision of said court in said proceeding was contrary to and against the evidence adduced before said court, and contrary to and against law;" and that, by reason of said court adjudging him guilty of contempt, he has been greatly injured in his property and otherwise, and asks this court, upon a review of the case upon certiorari, to set aside the proceedings and declare the order adjudging him guilty of contempt to be null and void.

It is argued by petitioner's counsel that the affidavit of the plaintiff Phillips, upon which the contempt proceeding is founded, does not state facts sufficient to give the court jurisdiction of the subject matter; that said affidavit abounds in legal conclusions without the statement of any fact upon which the conclusions are based.

1. Does the affidavit state any substantive fact sufficient to set the power of the court in motion? This is the material question that we are called upon to decide. If it does not, then the proceedings must be annulled. If it does, the judgment must stand.

The statute applicable to this case, provides that: "When the contempt is not committed in the immediate view and presence of the court, or judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt." * * * (1 Comp. L. 1522.)

Under a statute identical with these provisions, the supreme court of California, in *Batchelder* v. *Moore*, say: "The power of a court to punish for an alleged contempt of its authority, though undoubted, is in its nature arbitrary, and its exercise is not to be upheld, except under the circumstances and in the manner prescribed by law. It is essential to the validity of proceedings in contempt, subjecting a party to fine and imprisonment, that they show a case in point of jurisdiction within the provisions of the law by which

such proceedings are authorized, for mere presumptions and intendments are not to be indulged in their support. The statute of this state regulating contempts and their punishments provides that when the alleged contempt is not committed in the presence of the court an affidavit of the facts constituting the contempt shall be presented. * * * If there be no affidavit presented there is nothing to set the power of the court in motion; and if the affidavit, as presented, be one which, upon its face, fails to state the substantive facts which in point of law do, or might, constitute a contempt on the part of the accused, the same result must follow, for there is no distinction in such a case between the utter absence of an affidavit and the presentation of one which is defective in substance in stating the facts constituting the alleged contempt." (42 Cal. 414.)

The affidavit in this case charges but one offense. It sets out in detail the fact of the commencement of the suit of *Phillips* v. *Welch et al,,* and the proceedings had therein. The complaint and answer in said suit are referred to and made a part of the affidavit. The decree rendered in said suit is copied into the affidavit. Affiant then, among other things, states: "That said decision and decree was rendered in open court, and the several parties and their attorneys had actual knowledge thereof, and the same was served in due form on the several parties defendant on the — day of November, 1872, and the third day of December, A. D. 1872; that said decision and decree has never been appealed from, stayed, modified or reversed, but ever since the rendition thereof has been and now is in full force, virtue and effect;" that ever since said decision was rendered, affiant has been, and now is, the owner of the land described in the complaint and mentioned in the decree, and of the water, water-right, usufruct and privilege specified therein; that during the present season affiant has been engaged in the cultivation of his said land, and in growing crops of grain, vegetables and grass, and raising stock thereon, and needs and requires the use of the water awarded to him in said decree, and the whole thereof, to irrigate said land and the crops growing thereon, and for

watering his stock and for domestic purposes; "that the said defendant, E. D. Sweeney, on the first day of July, A. D. 1875, * * * and on divers and sundry other days between the first and the twenty-eighth days of July, A.D. 1875, did, in disobedience and resistance of a lawful writ and order of said district court, to-wit: the decree and injunction aforesaid made and entered in said cause, and in willful violation and disregard of said writ, order and decree, and in willful contempt of the said court and its said lawful writ, order and decree, unlawfully and intentionally violate and disobey said writ, order and decree, and unlawfully and intentionally diverted the waters of said stream in violation of said decree, and contrary to the terms and provisions thereof, and in violation of and contrary to the injunction therein contained ;" " that at the several dates aforesaid, said defendant, E. D. Sweeney, did unlawfully and intentionally divert the waters of said stream in quantities largely in excess of the quantities authorized or permitted by the decree, and for uses and purposes not authorized but forbidden by the decree;" that at the several dates aforesaid affiant needed and required all the water awarded to him by said decree in connection with his said land, to wit, thirty-one one-hundredth parts thereof, to irrigate said land and the crops growing thereon, and that he was deprived thereof by said excessive and unlawful diversion and use by said defendant, E. D. Sweeny, and that by such deprivation affiant was injured in his right and land, and that his crops greatly suffered and were actually damaged.

It is claimed by counsel for petitioner that the quantity of water to which he was entitled is clearly a question of law, and that the affidavit should contain a statement of the exact quantity of water that he was actually diverting, so that the court, from such statement, could have determined whether he was violating the decree or order, and especially is it contended that this fact should have been stated in the affidavit, because it appears from other averments therein that Sweeney has acquired the title of defendant Quill to the lands mentioned in the decree since the rendition thereof. Ordinarily, this would be the best mode of stating the facts.

But the decree rendered in the suit of *Phillips* v. *Welch et al.* is in many respects a peculiar one. It states the exact fractional part of the water in King's cañon to which each of the parties to the suit is entitled. The court found, among other facts, that plaintiff Phillips was the owner in fee of certain lands described in his complaint; that said land is agricultural and farming land; that the stream known as Kings Cañon creek flows through and over said land in the natural channel of said stream; that thirty-one one-hundredth parts of the water customarily flowing in said stream are necessary to be used in irrigating said land and the crops of grass, grain, and vegetables grown thereon, and for watering the stock, and for household and domestic uses of the plaintiff; "that the plaintiff as against the defendants, and each of them, is the owner of and entitled to use, for the purpose of irrigating said land and the crops grown thereon, * * * thirty-one one-hundredth parts of all the water customarily flowing in said stream;" "that the defendant, E. D. Sweeney, is the owner in fee of the land described in his answer, part of which is agricultural and farming land; that the waters of said creek flow in the natural channel through said land; that a portion thereof, to wit: sixteen one-hundredth parts of all the water customarily flowing in said stream is necessary for the irrigation of said land and the crops grown thereon, and for watering the stock and for the domestic purposes of the defendant; and that the defendant, E. D. Sweeney, in connection with said land, is the owner of an usufruct in, and is entitled to use sixteen one-hundredth parts of all the water customarily flowing in said stream for said purposes." Defendant Quill is entitled to use six one-hundredth parts in the same manner. The balance is portioned out respectively, in like manner, to the other parties defendants in said action. The decree follows the findings. It enjoins the plaintiff from diverting or otherwise depriving defendants, or either of them, of the water decreed to them. It perpetually enjoins the defendants, and each of them, "from diverting * * * any part of said Phillips' portion of said water, or otherwise depriving him of the use of the same for irrigation and for stock and domestic purposes."

Taking the facts in the decree with the sworn statements of Phillips, it seems to us that the affidavit was sufficient to give the court jurisdiction of the subject-matter of the contempt, and of the person of the petitioner. Conceding that the legal principles already quoted from the case of *Batchelder* v. *Moore* are applicable to this case, yet upon an examination of that case it must be admitted that the facts in relation to the affidavits are entirely dissimilar. In *Batchelder* v. *Moore*, the proceedings were based wholly upon the statute of that state, which provided "that every person who shall have been or shall be hereafter dispossessed or ejected from" premises under the judgment of a court, and who shall himself re-enter, or procure some one else to re-enter, shall be deemed guilty of a contempt. The court, after alluding to this statute, say: "It is essential that the person accused should be one who has been ejected or dispossessed, as provided by the act; and unless he be such person the act has no application whatever, and he cannot be guilty of the contempt therein denounced. In the affidavit of Batchelder, there is a total omission to allege that Calderwood was such a person, and the omission is obviously jurisdictional in its consequences." From the facts stated by the court, it will readily be seen that in that case there was an entire omission to make any statement whatever, defective or otherwise, of the essential fact that the statute positively required. The omission reached the very substance that was, by the provisions of the statute, necessary to be included in order to give the court jurisdiction. It was, as the court very properly said, the same as if no affidavit at all had been presented. Here, the objections are to the form, not the substance of the affidavit.

The essential fact to be determined by the court was whether or not the defendant Sweeney had, in disobedience of the decree and of the lawful process issued thereunder in the suit of *Phillips* v. *Welch*, deprived the plaintiff Phillips of the quantity of water decreed to him in that case. There is an averment in the affidavit that Phillips was deprived of the water, to which he was entitled, by the excessive and unlawful diversion and use of the water by Sweeney. It is

also stated that Sweeney, in direct violation of said decree unlawfully and intentionally diverted the waters of King's Cañon creek in quantities largely in excess of the quantities authorized or permitted by the decree, to plaintiff's damage, etc. The affidavit shows the exact quantity to which Sweeney is entitled, and when it states that he used a greater quantity it is as positive in its terms, in so far as the question of violating the decree and order is concerned, as if it stated the exact fractional part of the water of the stream which he had unlawfully diverted. But, admitting that there is a defect in the manner of stating these facts, it does not, as did the omission in *Batchelder* v. *Moore*, reach the substance, so as to be " obviously jurisdictional in its consequences."

Respondent's counsel contend that if we find the affidavit to be sufficient to give the court jurisdiction, we cannot examine the question whether or not the order adjudging Sweeney guilty of contempt is sustained by the evidence. This position is abundantly sustained by the authorities. This court, in all the numerous cases brought before it by the writ of *certiorari*, has uniformly held that the inquiry upon the writ could not be extended any further than is necessary to determine whether the inferior tribunal has exceeded its jurisdiction or has regularly pursued its authority. (*Maynard* v. *Railey*, 2 Nev. 313; *State* v. *County Commissioners of Washoe County*, 5 Nev. 317; *State ex rel. Fall* v. *County Commissioners of Humboldt County*, 6 Nev. 100; *State ex rel. Mason* v. *County Commissioners of Ormsby County*, 7 Nev. 393; *Hetzel* v *County Commissioners of Eureka County*, 8 Nev. 359.)

The decisions in California, including *Batchelder* v. *Moore*, are to the same effect. (*People ex rel. Lamby* v. *Dwinelle*, 29 Cal. 632; *People* v. *Johnson*, 30 Cal. 98; *Winter* v. *Fitzpatrick*, 35 Cal. 269; *People ex rel. Waldon* v. *Elkins*, 40 Cal. 642; *Barber* v. *Board of Supervisors of the City and County of San Francisco*, 42 Cal. 630; *Yenawine* v. *Richter*, 43 Cal. 312; *Central Pacific Railroad Company* v. *The Board of Equalization of Placer County*, 43 Cal. 365; *Petty* v. *County Court of San Joaquin County*, 45 Cal. 245; *Monreal* v. *Bush,*

46 Cal. 79; *Central Pacific Railroad Company* v. *Placer County*, 46 Cal. 670; *Reynolds* v. *County Court of San Joaquin County*, 47 Cal. 604.)

The affidavit of Phillips, in our judgment, presented a case for the legitimate action of the court. The district court had the authority to hear and determine the question whether or not Sweeney had been guilty of disobeying the decree, or any order or writ of injunction issued and served pursuant to its provisions. The court, after acquiring jurisdiction for that purpose, had the undoubted right to decide the question upon the law and the evidence. It may have erred. Whether it did or did not, it is not our province, in this proceeding, to inquire. We are prohibited by the statute from investigating this question. Even admitting that the court erred in the conclusions it reached, yet all the authorities above cited hold that error in judgment, in respect to a question which the court is authorized to investigate and determine, does not, by any means, constitute an excess of jurisdiction. If it did, then every error committed by any inferior tribunal, in the course of judicial investigations, would be an excess of jurisdiction, and the writ of certiorari would be converted into a writ of error instead of remaining, where the statute has placed it, a writ of review; and every case brought before us under this writ would have to be heard and determined in the same manner as if the right of appeal existed.

If appellate courts were compelled to examine the evidence in proceedings of this character, the result would have a tendency to destroy the binding force and effect of all judgments of justices of the peace and other inferior tribunals.

By adopting the rule contended for by petitioner, every criminal action for an alleged misdemeanor prosecuted and tried before a justice of the peace could, after the conviction of the defendant, on appeal to the district court, be brought before this court by the writ of certiorari, and it would be the duty of this court to examine into the evidence and see if justice had been done, and to determine whether the right of the defendant, in his person or prop-

erty, has been in any manner injuriously affected by any error that the inferior court may have committed during the progress of the trial, and if error appears, the judgment would have to be set aside; thus, as before stated, virtually giving the right of appeal in cases where no right of appeal exists.    Nevertheless, if such a course is authorized by the statute, it would be our duty to follow it without regard to the consequences.    But it is manifest that such is not the language, meaning or intention of the law.    Whenever the inferior tribunal has regularly pursued its authority, and has not in any respect exceeded its jurisdiction, our authority ceases.    We cannot in this proceeding furnish a panacea for all the "ills that flesh is heir to," nor can we correct any errors of law or fact, not jurisdictional in their character, that may be committed by any inferior tribunal acting within the scope of its authority.

2.  In pursuance of the warrant of attachment issued upon the affidavit of Phillips, the petitioner appeared before the court in person and by counsel, and made answer, specifically denying all the averments in said affidavit charging him with a disobedience of the process issued in the suit of *Phillips* v. *Welch.*    The court investigated the charge, heard and considered the evidence for and against the petitioner, and found the following facts:

"First.  At the several dates mentioned in the proceedings, to wit: July 1,    *   *   *   1875, the defendant, E. D. Sweeney, was diverting from the natural channel of said Kings Cañon creek, above the lands of H. P. Phillips, by means of pipes and flumes, and conducting the same permanently away from the stream and from the land of plaintiff to the town of Carson, to supply the people of Carson city with water, a large portion, to wit: about forty inches of the water of said stream;

"Second.  In the said cause of *Phillips* v. *Welch et al.,* said Sweeney answered and defended, asserting and claiming a right to divert from said stream, by means of his pipes and flumes, a portion, to wit: eight inches of the waters of said stream, and conduct the same, by means of his pipes and flumes away from said stream to the town of

Carson, which claim of right was litigated in said cause, and was not allowed by the court;

"Third. At the several dates aforesaid, * * * the plaintiff (Phillips) was seized of the land and water privilege described in the proceedings herein, and required and needed, and was entitled to have flow to and upon his land, and to use the same in the manner and for the purposes specified in the decree, thirty-one one hundredth parts of the water flowing in said stream, and at the several dates aforesaid * * * said Phillips and his land were deprived of the water which was awarded to said land by said decree, and no water, except a small quantity of seepage water was flowing to the land of said Phillips, and said lands and the crops growing thereon were thereby injured, and the right of said Phillips was thereby violated;

"Fourth. At the several dates aforesaid, * * * while said Sweeney was delivering said quantity of water away from the stream, and away from the land of said Phillips to Carson for sale to customers, the said land described in the answer of Sweeney and in the decree as belonging to defendant E. D. Sweeney, and which land was decreed sixteen one-hundredth parts of the water of said stream for irrigation, and for stock and domestic purposes, was occupied and cultivated by one James Authers as the tenant of said Sweeney under a written lease, which lease granted the land to said Authers without reservation of the water for five years, * * * and said Authers was at said several dates using the waters of said stream to irrigate said land, and the crops thereon;

"Fifth. At the several dates aforesaid * * * the said land known as the Quill land * * * was being occupied and cultivated, and all the water awarded to said Quill in connection with said land to irrigate the same was being diverted upon and used in irrigating the same.

"Wherefore, it is now and here considered and adjudged by the court that the defendant, E. D. Sweeney, has been guilty of the misconduct alleged against him in the proceedings herein, to wit, the willful violation of the order, decree and injunction made and entered in said cause, and that

such misconduct was calculated to and did defeat, impair and prejudice the rights of said Phillips in said action * * * awarded to him by the decree, and was calculated to and did injure the said land of the said Phillips, and the crops of the said Phillips growing thereon, and was calculated to and did damage the said Phillips. And it is now and here considered, ordered and adjudged that the said E. D. Sweeney has been guilty of contempt of court, and that he be fined," etc.

It is claimed by petitioner's counsel that an examination of the evidence will show that he was acquitted of any violation of the injunction order by using any water in excess of the amount allowed him by the decree; but was found guilty of a contempt of the district court in diverting the waters of said stream, and conveying the same to Carson city for sale; the court holding that the decree prohibited such use, and only allowed the respective parties to use the water for irrigation in connection with their land, and for stock and domestic purposes. It is argued that this is an erroneous construction of the decree, and hence the order should be set aside, as petitioner has really been found guilty of contempt for doing an act which he is not directly forbidden to do by the decree.

It is admitted that the previous decisions of this court upon the question of jurisdiction are stereotyped, and all adverse to an examination of the evidence in cases where it appears that the inferior tribunal acted within its jurisdiction, and that the general rule, as to the province of the writ, is such as we have stated; but it is contended that this court has hitherto acted without mature consideration, and superficially followed the general rule, without noticing the fact that in the earlier cases in England and in the United States a distinction was made that ought to be observed in this case, viz.: that where it affirmatively appears that the petitioner has no other remedy, and where, unless the appellate court exercised its authority, there would be a failure of justice, the review was extended to an examination of the evidence and all questions of law determined in the lower court, and if any error was found the proceedings

were annulled. In this connection it was argued that the present case differs from all previous decided cases in this state wherein (with but one exception) the petitioners had some other remedy and the decision was not final.

The argument that petitioner had no other remedy was advanced when this case was argued on the appeal, and this court was then asked by both parties to examine the evidence and decide the case upon its merits, without reference to jurisdictional questions. After mature consideration, we then held that it was the duty of the court to decide, "*in limine,* whether in a case like this, where the parties before the court are willing to concede jurisdiction for the purpose of obtaining our opinion upon the matters in controversy, we ought to raise the question ourselves." We decided that it ought to be done, and disposed of the case purely upon jurisdictional grounds. (11 Nev. 188.)

Petitioner was next brought before the chief justice upon a writ of habeas corpus, where a similar argument was again advanced, and the petitioner was remanded into custody upon the familiar principle, almost universally recognized, that when a court commits a party for a contempt its adjudication is a conviction, and its commitment, in consequence, is execution; and no court can discharge on habeas corpus a person that is in execution by the judgment of any other court having jurisdiction of the subject matter of the contempt.

This principle is acknowledged by counsel for petitioner to be correct, and is certainly too well settled to require a citation of the authorities. Some of the cases are referred to in *Ex parte Winston,* 9 Nev. 71.

Without attempting to follow the learned counsel in his review and criticisms of former cases on certiorari, decided by this court, it seems to us that it is only necessary, in addition to what we have already said, to state that we are not acting upon the common law rule relating to the writ of certiorari, under which courts in earlier times, and in New York and some of the other states at the present time, often exercised their discretion in granting or refusing the writ, according to the justice of the case. The truth is, that

there is no uniformity upon this point, and we are of opinion that even under the writ as known at common law a majority of the decisions in the United States hold that the writ must be confined to the question of jurisdiction; but, however that may be, it is here unnecessary to decide, as the question is to some extent foreign to the decision in this case.

This court must follow the provisions of the statute of this state, the language of which is clear, plain and, in our judgment, decisive. It has been often quoted, and invariably construed one way: "The writ shall be granted in all cases when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, and there is no appeal, nor, in the judgment of the court, any plain, speedy and adequate remedy." (1 Comp. L., 1497.)

Under this provision the court is not authorized to issue the writ, because there is no other remedy, unless it also appears that the inferior tribunal has exceeded its jurisdiction.

The statute in another section provides as follows: "The review upon this writ shall not be extended further than to determine whether the inferior tribunal, board or officer has regularly pursued the authority of such tribunal, board or officer." (1 Comp. L., 1503.)

In *Maynard* v. *Railey, supra,* this court in construing this section held that the expression "has regularly pursued its authority," did not authorize an inquiry into any irregularity or question beyond that of jurisdiction.

In the *C. P. R. R. Co.* v. *The Board of Equalization of Placer Co., supra,* it was there, as here, argued by able counsel that the review of the proceedings of the inferior tribunal was not to be confined to the bare question whether the subject matter or the parties were within the jurisdiction of the court, but must be extended to all questions affecting the mode in which the jurisdiction or the power of the inferior tribunal has been exercised, and that the statute must be so construed as to authorize the court, upon a review of the case, to determine not only whether

the inferior tribunal had authority to deal with the parties and subject matter; but whether it dealt with them in the manner authorized by law. The court, after citing the provisions of the statute of that state, identical with the provisions quoted from our statute, held that the words "has exceeded the jurisdiction of such tribunal, board," etc., and "has regularly pursued the authority of such tribunal, board," etc., as expressed in these two respective sections of the practice act, present substantially the same idea, and refused to inquire into or decide any question except that of jurisdiction. This court has always followed this construction, and we are satisfied that no other conclusion can be arrived at without doing violence to the language of the statute.

Under this construction can it seriously be contended that it is our duty to decide this case upon its merits without reference to the question of jurisdiction?

The fourth subdivision of the act relating to contempts and their punishments provides that "disobedience or resistance to any lawful writ, order, rule or process issued by the court or judge at chambers," shall be deemed a contempt. The affidavit sets forth the fact that petitioner has disobeyed a lawful writ and order that was issued by the district court of Ormsby county under a final judgment, obtained in said court in the case of *Phillips* v. *Welch.* Upon this affidavit a warrant was issued and petitioner was brought before the court, and a hearing was had, which resulted in his conviction, and he was fined in the sum of five hundred dollars.

It is, of course, admitted that the district court has the power to punish for contempts in cases like the one under consideration. It must also be admitted, if the affidavit is sufficient, that the court had jurisdiction of this case. As was said in the case last referred to from California, "jurisdiction, as applied to a particular claim or controversy, is the power to hear and determine that controversy;" and as jurisdiction is the power to hear and determine a disputed controversy, it is beyond all question that the district court of Ormsby county had jurisdiction of this case. In fact no

other court could hear or determine the disputed controversy or punish petitioner if he was found guilty of the contempt. (*Ex parte Cohen and Jones*, 5 Cal. 494; *People ex rel. Wright* v. *The County Judge of Placer County*, 27 Cal. 151; *Lessee of John Penn, Jr.*, v. *Messenger*, 1 Yeates, 2; *Passmore Williamson's Case*, 27 Penn. St. 18; *Gales* v. *McDaniel*, 4 Stew. and Port. 69; *Ex parte Stickney*, 40 Ala. 167; *Yates* v. *Lansing*, 9 Johns. 423; *State* v. *Towle*, 42 N. H. 544; *Vilas* v. *Burton*, 27 Vt. 61; *Crosby* v. *Lord Mayor of London*, 3 Wilson, 198.)

The truth is, that in a case like the present, where the court acquired jurisdiction of the subject-matter and of the person of the petitioner, this court has no jurisdiction either on appeal, writ of error, habeas corpus or certiorari.

The decisions are clear, positive, and, in our judgment, conclusive upon this point.

In *The People* v. *Johnson*, *supra*, defendant was arrested, tried and convicted before a justice of the peace, fined one hundred dollars, and upon appeal to the county court the judgment was affirmed. An appeal was then taken to the supreme court, and there dismissed for want of jurisdiction. Sanderson, J., in delivering the opinion of the court, said: "This is a criminal action for an alleged misdemeanor, in which no question as to the jurisdiction of the court below is made. In such a case this court has no jurisdiction, either on appeal or writ of error or certiorari. * * * Our jurisdiction * * * to review the proceedings of inferior courts, boards and officers upon certiorari is limited, by the very nature of the writ, to cases where the jurisdiction of the inferior courts, board or officer is impeached. Hence, in no respect have we jurisdiction in the present case. In all cases of misdemeanor, the constitution has prescribed that the judgment of the county court, whether erroneous or not, shall be final except where there has been an excess of jurisdiction, in which case only it can be reviewed. With the wisdom of this provision we have nothing to do." It will be observed from reading the entire opinion in that case that it involved questions of great importance. A certain road for the general use of

the public was claimed by private parties, for whom the defendant was acting as gate-tender and collector of tolls. The legality of the toll was there involved in the action just as the legal right of the petitioner here as to diverting the waters from King's Cañon creek to Carson city is involved. The appeal in that case, just as the proceedings in this case, was avowedly taken for the purpose of determining the right of defendant to do a certain thing, and the court was there, as here, urged to pass upon the legal questions, notwithstanding it might be of opinion that it had no jurisdiction. The court, in refusing to consider the case on its merits, among other things, said, that to examine such a case upon its merits, in order to gratify the wishes of counsel, "would be to set a most pernicious example, and establish a dangerous precedent."

It is true, that in that particular case, there was another remedy whereby a decision upon the merits could be obtained, but the reasoning of the decision, nevertheless, applies to this case.

A contempt of the character alleged in this proceeding is a specific, substantive and distinct criminal offense, and under the constitution and laws of this State the judgment of conviction in such a case, if within the jurisdiction of the inferior court, is as final and conclusive as in any other criminal case for a misdemeanor. (*Phillips* v. *Welch, supra.*)

In *The People ex rel. Lamby* v. *Dwinelle, supra,* the case was brought before the supreme court of California by certiorari for the purpose of reviewing the proceedings had in the district court, where the court had rendered a judgment of conviction against the relator Lamby for contempt. The proceedings in the district court were instituted under the provisions of the statute referred to in *Batchelder* v. *Moore.* The defense that Lamby made did not satisfy the district court that his re-entry after he had been dispossessed under the action of ejectment was by legal right, and the supreme court, in discussing the questions involved, say: "Whether the court was right or wrong upon the merits of the issue joined upon these proceedings is not the question before us, but whether the court exceeded its jurisdiction is the sub-

ject of inquiry." The court then say that the proceedings which resulted in the judgment of conviction was authorized by the statute; that "the court had jurisdiction of the subject-matter and of the person of the relator, and even if it were admitted that the court erred upon the merits, it cannot be said the judgment for that reason was *coram non judice.*"

So in this case the statute of this state authorized the proceedings in the district court. That court had jurisdiction of the subject-matter and of the person of petitioner. The petitioner upon a hearing failed to satisfy the court that his diversion of the water from King's Cañon creek was not in disobedience of the decree and injunction order in the suit of *Phillips* v. *Welch*, or that he did not by such diversion deprive the plaintiff Phillips of the quantity of water decreed to him in said action, and we cannot upon the writ of certiorari review the case upon its merits.

The argument as to the hardships of this case so earnestly advanced by petitioner's counsel, even if conceded to exist, cannot be considered.

As was said by the supreme court of the United States in *Ex parte Kearney* (7 Wheat. 45): " Where the law is clear this argument can be of no avail. * * * Wherever power is lodged it may be abused. But this forms no solid objection against its exercise. Confidence must be reposed somewhere; and if there should be an abuse, it will be a public grievance, for which a remedy may be applied by the legislature, and is not to be devised by courts of justice "

The writ must be dismissed. It is so ordered.

BEATTY, J., dissenting:

I dissent from the judgment and opinion of the court upon several points, which, in my opinion, are of sufficient importance to demand a full statement.

As to the proposition that this court has no power upon certiorari to inquire into or to correct any error of an inferior tribunal, unless it involves an excess of jurisdiction, I fully agree with my associates, but as to what constitutes an excess of jurisdiction, and as to how such excess of juris-

diction may be shown in this proceeding, there is a wide difference of opinion between us.

If I understand the effect of the opinion of the court, interpreted as it must be, in the light of the facts of this case, it is henceforth the law of Nevada that any inferior judicial tribunal may exceed its jurisdiction with impunity, if it takes care to keep out of the record of its proceedings those matters which will show the excess of jurisdiction. And it is held, in effect, if not in express terms, that when the powers of such inferior tribunal have been "regularly set in motion" by the presentation of a charge of which it has jurisdiction, it may thereafter proceed to try, convict and punish the person accused for an offense of which it has no jurisdiction. And no matter how clearly the subsequent proceedings may show that the charge by which the powers of the court were "set in motion" was completely ignored in the judgment finally rendered, and the accused convicted of another offense entirely beyond the jurisdiction of the court, we can never know that there has been any excess of jurisdiction. If we can see that there was a good charge made of an offense within the jurisdiction of the court, and if the sentence of the court is such as might have been imposed upon a conviction of that offense, we must close our eyes to everything beyond, even to the plain construction of the written findings of the court, showing that the accused was not convicted of the offense charged, but was convicted of something else; convicted, in fact, as in this case, of something which is no offense at all. I shall endeavor to show that upon such theories alone can the conclusions of the court be upheld.

The petitioner Sweeney was charged with a contempt of court in violating the decree and injunction in the case of *Phillips* v. *Welch,* to which he was a party defendant. He was charged with doing two things which were supposed to be forbidden by the decree and injunction: First. With diverting more water than he was entitled to divert; Second. With using that water in a mode forbidden by the decree; that is to say, he was accused of conveying the water permanently away from the stream, in pipes, and selling it to

customers in Carson city instead of using it to irrigate his land, through which the stream flows.

The first of these charges is the one dealt with exclusively in the opinion of the court, and it is there held that it was a sufficient charge to give the court jurisdiction to proceed with the trial of the petitioner. Here, again, I am in thorough accord with the majority opinion. I fully agree that the court had jurisdiction to try Sweeney on that charge, and if he had been convicted and fined for an excessive diversion of water, I should have joined with the court in saying that the writ of certiorari afforded him no remedy, no matter how erroneous his conviction might have been. But the fact happens to be, and it is shown by the record in the case, that Sweeney was acquitted of any excessive diversion of water, and was convicted only on the other charge of diverting water to Carson.

At the close of the testimony for the prosecution the district judge decided and announced his opinion in open court that Sweeney had not diverted more water than was awarded to him by the decree, and that the only question was as to whether his diversion of water to Carson city for sale was a violation of the decree. Having held this question under advisement for some days, he filed his written findings and judgment convicting Sweeney of contempt and fining him therefor. The respondent contends that those findings show that Sweeney was convicted on both charges, and that we cannot consider the oral decision of the court that Sweeney was not guilty of the first.

As to the proper construction of the written findings of the court—the material portions of which are quoted in the opinion of the chief justice—all that is there said is: "From this order we are left to infer that the defendant, Sweeney, did use the waters of said stream in excess of the quantity allowed him by the decree." We are, indeed, "left to infer" that Sweeney was found guilty of excessive diversion of the waters of the stream, and we are left to infer it without any valid grounds for such an inference. But it is upon this inference, and the assumption that we must utterly ignore the oral decision of the district judge

expressly acquitting Sweeney of any excessive diversion of water, that the judgment of the court is made to stand. It will be my endeavor to show that neither the inference nor the assumption is sustainable. And if I shall fail to show that the written decision of the court, standing by itself, acquits Sweeney of excessive diversion of water, and if I also fail to show that his oral decision may be considered in this proceeding, I shall still insist that, although the written decision of the court may not be an acquittal on the charge of excessive diversion, it clearly is a conviction on the charge of forbidden use, and, consequently, that it shows that Sweeney was tried, convicted and fined—in part, at least—for an act which was not in violation of any lawful order of the court, and which, therefore, constituted no offense which the court had jurisdiction to try by the summary and arbitrary process of attachment for contempt.

Before entering upon a discussion of these points, however, it will be well to mention the manner in which the record of this case, whatever is the record, has been brought before us.

The petitioner, shortly after his conviction in the district court, appealed from the judgment, and in support of his appeal prepared a statement of the case, which was filed in this court in connection with the record of the affidavit, attachment, answer of the defendant, findings of the court, etc. The statement was not settled by the court in the form of a bill of exceptions, but was agreed to by the counsel for the prosecution and defense. It is in that statement so settled that the fact is made to appear that the district judge at the close of the testimony for the prosecution declared Sweeney not guilty on the charge of excessive diversion of water. The appeal in which that statement was brought up having been dismissed for want of jurisdiction in this court to entertain it (11 Nev. 187), this proceeding was commenced, and, by stipulation between the respondent and petitioner, it was agreed that, instead of a regular return to the writ of certiorari, the transcript prepared for the purposes of the appeal should be deemed and treated as a return to the writ, so far as its contents might be proper

to be considered if regularly returned.    According to my construction of this stipulation we are entitled to look at everything in the transcript before us which we might have ordered to be returned to the writ, and which will enable us to decide whether the district court has exceeded its jurisdiction.

In the case of *Whitney* v. *Board of Delegates* (14 Cal. 500), which was approved by this court in the *State* v. *Commissioners of Washoe* (5 Nev. 318), it was decided that the writ of certiorari brings up everything necessary to determine the question of jurisdiction, not only that which is technically record, but everything in the nature of record, including the evidence in regard to jurisdictional facts where their existence is in question.    (See *People* v. *Goodwin,* 1 Selden, 572.)    These cases establish the general principle, but the decision in *Blair* v. *Hamilton* (32 Cal. 52) is so aptly in point that I quote: "It is first insisted, on the part of the defendant, that in passing upon the question before us no resort can be had to the finding of facts, upon the ground that the same constitutes no part of the record, for the reason that it was not prepared and filed until the next term of the court, at which time, as is claimed, the court had lost all jurisdiction of the case.    If the finding be disregarded the result would be the same, as will presently appear; but were it at all necessary that we should be put in possession of the facts in view of which the court below acted, and which are not technically of record, it would be competent for this court to require the court below to certify such facts in its return to the writ.    In many cases jurisdictional facts may not appear of record, either by failure of the inferior court or officer to follow the requirements of the law and make them of record, or because the law itself does not require it to be done.    In such cases this court, and all other courts having jurisdiction to review and correct the proceedings of inferior courts, would be powerless unless it can compel the inferior tribunal to certify to this court not only what is technically denominated the record, but such facts, or the evidence of them, as may be necessary to determine whatever questions

as to the jurisdiction of the inferior tribunal may be involv-
ed, *and the grossest abuses of power, to the great reproach of
the law, might be perpetrated with impunity and without the
possibility of a remedy.*"

The language which I have italicized points out the ab-
surdity of the position that a court which has power to
correct excesses of jurisdiction of inferior tribunals may be
utterly deprived of the means of affording any redress by
the neglect or willful misconduct of the inferior court in
failing, or purposely omitting, to put upon record the mat-
ters by which its excess of jurisdiction may be shown. Sec-
tion 443 of our practice act is identical with section 453 of
the California practice act, by virtue of which it was held,
in the case just referred to, that the supreme court could
compel a full return of everything necessary to determine
the question of jurisdiction.  I say, therefore, assuming
the correctness of that decision, that in this case, if the de-
cision of Judge Wright, orally announced at the close of
the testimony for the prosecution, that Sweeney was not
guilty of any excessive diversion of water, will enable us to
say that the district court exceeded its jurisdiction in the
proceeding under review, then we could have compelled a
return of that decision to our writ of certiorari; and if
we could have compelled a return of it, then I say that
under the stipulation of these parties it may be considered in
this case.  I hope to be able to make it clear that the ac-
quittal of Sweeney on the first charge necessarily convicts
the district court of an excess of jurisdiction, because it
will follow that he can only have been found guilty on the
second charge, unless we are to adopt the respondent's con-
struction of the written findings afterward filed, and hold,
with him, that the district judge, after having induced
Sweeney to believe that he would find in his favor on the
only issue of fact in the case, and to abstain from intro-
ducing rebutting testimony, was guilty of the gross outrage
of afterward changing his decision without giving the peti-
tioner any opportunity of introducing his evidence.  I
should be very unwilling to conclude that the district judge
had been guilty of such conduct, and I fail to see that the

written findings put him in the position to which the argument of respondent would consign him. But if I were forced to conclude that he had done what respondent says he has done, I should still say that he had exceeded his jurisdiction in another particular.

The district court was bound to hear the witnesses for the defense. (Comp. Laws, 1528.) To have refused to do so would not only have been a gross outrage upon propriety and decency, but would have been a departure from the forms prescribed by law, and therefore an excess of jurisdiction; for a court which is limited to one mode of procedure has no authority to proceed by a different mode. This explains the meaning of the language of the statute: "has regularly pursued the authority," etc. (Comp. Laws, 1503.) (*People ex rel. Seward* v. *The Judges of the County of Dutchess*, 23 Wend. 362.) Then, if the district court would have exceeded its jurisdiction by arbitrarily refusing to hear Sweeney's witnesses, how much better would the case stand if, after deluding him into sending away his witnesses unsworn, by pretending to acquit him on the first charge, the court had afterward found him guilty on that charge? The distinction between the two cases would scarcely have amounted to a difference. But, in truth, the district judge never did convict Sweeney of diverting more water than he was entitled to divert, and an inspection of his written findings will show the truth of this statement. Before entering upon that inquiry, however, it will be convenient to ascertain the proper construction of the decree and injunction in the case of *Phillips* v. *Welch*, and to determine what acts would be violative thereof.

The affidavit upon which Sweeney was attached sets out the findings of fact, conclusions of law and decree and injunction in that case, from which it appears that the suit was brought to enjoin the defendant and others, (including Sweeney) from diverting the water of King's Cañon creek above the land of plaintiff, through which it flows in its natural channel. The nature of the litigation and the issues determined will sufficiently appear from those portions of the findings and decree which relate to the rights of Phillips

and Sweeney. It was found that the stream flows in its natural channel through the lands of the several parties to the suit, and that certain proportions of the water are necessary to them for irrigating their land, watering their stock, and for household and domestic purposes. To Phillips, it was found that thirty-one one-hundredths of the stream are necessary, and to Sweeney sixteen one-hundredths. It was found that the grantors of Phillips had appropriated thirty-one one-hundredths of the stream for the purposes specified. As to whether Sweeney or his grantors had made any appropriation, the findings are silent; but the conclusion of the court as to his rights, respecting the use of the water allotted to him, is expressed in the same language as that with respect to the rights of Phillips. The finding as to Sweeney is as follows: "That the defendant, E. D. Sweeney, is the owner in fee of the land described in his answer, part of which is agricultural and farming land; that the waters of said creek flow in the natural channel through said land; that a portion thereof, to wit, sixteen one-hundredth parts of all the water customarily flowing in said stream, is necessary for the irrigation of said land and the crops grown thereon, and for watering the stock, and for the domestic purposes of the defendant; and that the defendant, E. D. Sweeney, in connection with said land, is the owner of an usufruct in and is entitled to use sixteen one-hundredth parts of all the water customarily flowing in said stream for said purposes." By similar findings the whole stream is parceled out in various proportions to the several parties. The conclusion as to the rights of Phillips and Sweeney are as follows: "That the plaintiff, H. P. Phillips, is entitled to have and recover from all of the defendants and each of them, and to have a decree for thirty-one one-hundredth parts of all the water customarily flowing in said stream, and for the use of the same for the irrigation of his said land and crops, and for his stock and domestic purposes.

"That the defendant, E. D. Sweeney, is entitled to recover against the plaintiff and from each of the other defendants judgment and decree for sixteen one-hundredth parts of all the water customarily flowing in said stream,

and for the use of the same in connection with his said land for irrigation and for stock and domestic purposes."

The decree follows these findings and conclusions. It declares the rights of the respective parties, and merely enjoins each of them from diverting any portion of the water allotted to the others, or otherwise depriving them of the use of the same for irrigation, stock and domestic purposes. In other words, the only thing the petitioner, Sweeney, was forbidden to do by the express terms of the decree and injunction was to divert or consume more than sixteen-hundredths of the stream; and the question which in the opinion of the district court was the only one to be decided, and which I now propose to examine, is, whether it was a contempt of court in the petitioner to bring his share of the water to Carson and sell it, instead of using it on and in connection with his land.

It is *res adjudicata* in this case that Sweeney's offense, if any, is a criminal offense, (11 Nev. 187). In *Maxwell* v. *Rives*, (11 Nev. 221) we decided that "the statute concerning contempts is a penal statute, and must be strictly construed in favor of those accused of violating its prohibitions."

Upon the same principle it must be held that when a man is criminally prosecuted for violating an order of court, the order must be strictly construed in his favor. It stands in the same relation to the act complained of that the penal statutes bear to ordinary offenses. It is of no greater dignity than the laws of the land and deserves no peculiar favor. The presumptions in favor of innocence and the liberty of the citizen weigh just as strongly against it as they do against an act of the legislature. When a man is criminally charged for doing an act in violation of law, a law must be shown which distinctly forbids the act complained of, and its express terms will not be aided by doubtful implications in order, by construction, to make that a crime which is not plainly declared to be so. Applying this rule to the decree in *Phillips* v. *Welch*, it seems clear to my mind that the parties to that action were forbidden to do but one thing; they were only forbidden to con-

sume more than their share of the water, and they could be
guilty of contempt in no other way than by violating that
injunction.

This certainly is the full extent of the injunction if we
look only to its express terms.   But counsel for respondent
contend that the finding and decree of the court that Swee-
ney was, "in connection with his land," the owner of and
entitled to use for irrigation, etc., so much water, was an
implied prohibition of any other use.   But surely it will
not be contended that any such prohibition is *necessarily*
to be implied from the terms of the findings, and if not it
certainly cannot be made the ground of a criminal charge.
To my mind, however, no such implication is even remotely
deducible from the language of the decree.   The fact that
it parcels out the stream among half a dozen riparian pro-
prietors, giving them the right to consume it entirely for
irrigation; the fact that Sweeney is decreed to have exactly
the same rights with respect to his sixteen-hundredths that
Phillips has to his thirty-one-hundredths, and that it is
found that the grantors of Phillips appropriated that
amount of water; and the fact that there is no good
authority for holding that Sweeney, as a mere riparian pro-
prietor, could have the right to consume nearly a sixth part
of the stream for irrigation, is proof conclusive, to my mind,
that the decree is, in effect, a finding that Sweeney's right
was acquired by appropriation.   The absence of a specific
finding to that effect counts for nothing, for, as has often
been decided in this court, the facts will be presumed, in
the absence of any showing to the contrary, to be such as
will sustain the conclusions of the court.   If, then, it is a
fact that Sweeney's right, as established by the decree, is a
right founded upon appropriation or *user*, the law is well
settled that he may change the use at his pleasure.   So
long as he consumes no more water than he has been accus-
tomed to consume, those who are below him on the
stream have no right to complain of any change in the mode
of consumption, for the reason that they are not injured
thereby. (Angell on Water Courses, secs. 227, 228, 149, *a
et seq.*)   Besides, that part of the decree here referred to is

merely an affirmative declaration of Sweeney's rights. In declaring that he has one right it does not deny him all other rights. When it says that Sweeney has a right to irrigate, it does not thereby declare that Phillips has a right that he shall do nothing but irrigate. The rights of Phillips are expressly declared in another portion of the decree, and the truth seems to be that the necessary implication from the finding in favor of Sweeney is that he has the right of all appropriators of water, to change the mode of use as often as he pleases, provided he does not thereby diminish the quantity or deteriorate the quality of the water flowing to those below him. The good sense of this rule seems to be obvious. But counsel argue that the change of use in this case is an injury to Phillips, because if Sweeney used his water on his land he might not consume it all, and then it would flow back into the stream and down to the land of Phillips; and also that if Sweeney kept his land wet Phillips' land would get some advantage from percolation and absorption. It is a sufficient answer to this to say that Phillips has no right independent of the decree to such incidental advantages as depend upon Sweeney's volition. If Sweeney has the right to consume a certain quantity of water Phillips has no right to any part of it, although he might actually get it if Sweeney was compelled by circumstances or should choose to let it flow by him. Moreover, if it is a fact that it would be an advantage to Phillips if Sweeney used his water on his land, such fact is not established by the decree, and neither this court nor the district court is authorized to assume it. The right of Phillips that he should so use it, if any such exists, is not sanctioned by the injunction, and we are not authorized ex post facto to enlarge the terms of the injunction for the purpose of trapping Sweeney into a crime. The mere fact that Phillips may have been damaged does not convict Sweeney of contempt. To be a contempt the injury must have been caused by a forbidden act.

Assuming, then, that Sweeney has never been prohibited by any lawful order of court from selling his sixteen-hundredths of the stream in Carson city, how does the case

stand? He is accused in the affidavit of two acts alleged to be contempts of court, of excessive diversion and of diversion to Carson city. One of these acts is in violation of the order of the court, and the other is not. One it has authority to punish; the other it has no authority to punish. Suppose, then, it has tried both charges together, found the defendant guilty generally and imposed a lumping fine, how can it ever be ascertained what part of the fine was apportioned to the innocent, and what part to the guilty act? And if the court, along with the case which it had authority to try, has tried another case beyond its jurisdiction, and has blended the two proceedings together so that they cannot possibly be disentangled, can it be said that the jurisdiction of the court has not been exceeded? It seems to my mind clear that in such a case, the fact clearly appearing that there has been an excess of jurisdiction, the whole proceeding must fall together. This is the result that follows from the position of respondent: That we can look at nothing but the findings of the court, and that they show a conviction of Sweeney on both charges. But the findings of the court do not convict him on both charges. They are quoted in the opinion of the chief justice.

No. 1 finds that Sweeney was diverting from the stream and conducting to Carson about forty inches of water; but there is no finding—and there can be no presumption or intendment in aid of a special verdict in a criminal case (and that is what these findings are)—that forty inches are sixteen-hundredths of the stream.

No. 2 amounts at most to this: That at the time of the decree Sweeney had no right to the water which he was conveying to Carson. Suppose he had no right to that water, what was to prevent him from doing what he afterward did, take the water he was entitled to for irrigation and bring that to Carson?

No. 3 finds that Phillips was deprived of water and thereby injured. But if Sweeney was not taking more than he was entitled to, then it was not by Sweeney but by some one else that Phillips was injured.

No. 4 finds that while Sweeny was diverting water to

Carson the land, in connection with which the water had been awarded to him, was leased to Authers by a lease containing no reservation of the water. It is upon this finding that the whole argument of the respondent is built, and it is briefly this: The effect of the decree was to declare or to make the water parcel of, or appurtenant to, the land, and a lease without reservation of the water carried the water with it, and left Sweeney no right to any portion of the water, so that any diversion by him was an excessive diversion. This argument has been already partially answered. The decree does not, and could not, make sixteen-hundredths of the stream parcel of or appurtenant to the land. The right of a riparian proprietor to have a running stream flow as it has been accustomed to flow, and to use the water for domestic purposes and for watering stock, is parcel of the land, and passes by a conveyance of the land unless expressly reserved. This may be true, also, of that portion of a stream which has been appropriated for irrigating land, if the conveyance is made while that use of the water is continued. But, as has been shown, a person who appropriates water for one use may change the use at pleasure. If he takes it in the first place for irrigation, he may, if he finds it to his advantage, conduct it away in pipes and sell it; and if he does so change the use, and afterwards conveys the land, the water so appropriated does not pass with the land any more than a house would pass with the land because it had once stood on it, if it had been removed before the land was sold. The owner of land may, while he is the owner, remove from it not only those things that have been added to it by the hands of man, but even the substance of the soil, and a grantee of the land will take only what is left on the land at the date of the sale. Say then that the sixteen-hundredths of the water of the stream had been annexed to Sweeney's land by an act of appropriation (by which means alone they could have been so annexed), there is nothing in the findings to show that before he leased to Authers he had not changed the use; there is nothing to show that he had not Authers' license to use a part of the water belonging to the land, if it did

still belong to it; and there is nothing to show that he and Authers together used as much as sixteen-hundredths of the stream.

No. 5 shows that another parcel of land, of which Sweeney had acquired title after the decree, was being occupied and cultivated, and all the water awarded to it in the decree used in connection with it. This finding that all the water awarded to the Quill ranch was being used to irrigate it, stands in significant contrast to the finding that Sweeney's tenant, Authers, was using *some* water on the Sweeney ranch, and proves that the court no more intended to find than it did actually find that Sweeney and Authers together were using more water than had been allotted to Sweeney.

I repeat, therefore, that the findings of the court, construed as a special verdict in a criminal case should be construed, do not establish facts from which it can be inferred that Sweeney diverted a drop more of the water of the stream than he had a right to divert. They are perfectly consistent with the oral decision that he was innocent of that charge.

It is constantly assumed throughout the opinion of the court that it is necessary to resort to the evidence in the case to retry it on its merits, to convert the writ of review into a writ of error in order to be able to see that Sweeney was not convicted of excessive diversion of water, and was convicted and fined for diverting water to Carson. I believe I have sufficiently shown that an examination of what is conceded on all sides to be a part of the record in the case— that is, the written findings of the court—will show that Sweeney was acquitted on the first and convicted only on the second charge. I believe, moreover, that I have shown by the authority of a case directly in point that the oral decision of the court is properly a part of the record before us, under the stipulation of the parties, and that it clearly expresses what is alone inferrable from the written findings.

Assuming it to have been shown that Sweeney's diversion of his share of the water to Carson was no violation of the

decree or injunction, and that he was tried and convicted of that charge and no other, I shall proceed to inquire whether the district court, in so trying and convicting him, exceeded its jurisdiction.

There ought to be no doubt or question, it seems to me, that a court, however extensive or general its jurisdiction in other respects, is, with respect to its power to punish for contempts, of special and strictly limited jurisdiction. The process is summary. There is no right to a jury trial, and there is no appeal. Necessity alone can justify the conferring of such arbitrary power upon any tribunal, and the extent of the power is accordingly limited by the extent of the necessity. Every court has power, by summary process, to punish contempts of its authority; but if it punishes by that process an act which is not a contempt, it exceeds its jurisdiction. Whenever a charge of contempt is laid before a court, it must compare the facts alleged with the law, or the order which defines the contempt, and decide *in limine* whether they constitute a violation of such law or order. If they do, the court has jurisdiction to proceed, and an error in deciding any question of law that may incidentally arise in the course of the trial, or in finding the person accused guilty on insufficient evidence, or against the weight of evidence, will be an error merely, and not an excess of jurisdiction. But if the facts alleged do not constitute a contempt, the court has no jurisdiction to proceed, and if it erroneously decides that a contempt has been charged, and does proceed with the case, the error in deciding that a case has been presented within its jurisdiction is not merely an error, it is an error that involves an excess of jurisdiction. Every excess of jurisdiction is an error, though every error is not an excess of jurisdiction. This is a distinction which, it seems to me, has been too little attended to in the opinion of the court, where it is in effect held that, the district court being obliged to decide whether the facts found constituted a breach of its order, an erroneous decision on that point was an error merely, and not an excess of jurisdiction.

The case of *Batchelder* v. *Moore* (42 Cal. 415), establishes the principle for which I am contending: " If there be no

affidavit presented, there is nothing to set the power of the court in motion; and if the affidavit, as presented, be one which, upon its face, fails to state the substantive facts which, in point of law, do or might constitute a contempt on the part of the accused, the same result must follow," etc. The authority and correctness of that decision are conceded in the opinion of the court, and it is greatly relied on as sustaining the conclusions reached in this case. I think that, so far as it goes, it is directly against those conclusions. If Sweeney had been charged with nothing but a diversion of water to Carson city in the affidavit, and if that was not a violation of the decree, then, according to *Batchelder* v. *Moore*, the court would have had no jurisdiction to try him. So much, at least, it establishes. But it is said Sweeney was charged with substantive facts (the diversion of too much water) which were sufficient to set the power of the court in motion, and, therefore, the decision in *Batchelder* v. *Moore* shows that it had jurisdiction to proceed. I do not see that that decision establishes anything of the sort. It decides that one thing is an excess of jurisdiction, but it does not decide that nothing else can be. To say that a court exceeds its jurisdiction in trying a man for contempt, when no contempt has been charged, does not imply that if a contempt is charged a court may not exceed its jurisdiction if it ignores the charge made and tries him for something else. Can a court try and convict a man of an offense of which it has no jurisdiction merely because it has been artfully charged in connection with an offense of which it has jurisdiction? Does the power of a court once put in motion acquire such fearful headway as to reach everything outside of its proper limits?

Suppose that instead of one affidavit there had been two, one charging Sweeney with excessive diversion of water and the other with diverting water to Carson. Would the charge made in the first have authorized the court to try and convict him on the second? If not, what difference does it make that both charges are embraced in one document instead of two?

I am thus brought back to the point from which I started.

If it is desired to convict a man of a charge of which a court has no jurisdiction, all that is necessary is to couple with it another charge of which the court has jurisdiction. This will set the power of the court in motion, and it can then ignore the charge of which it has jurisdiction, and try, convict, and fine the person accused on the other charge; and although this may clearly appear, certiorari will afford no remedy.

This is a doctrine to which I cannot assent. I think the judgment of the district court should be set aside.