# THE SUPREME COURT

OF THE

# STATE OF NEVADA.

# JULY TERM, 1876.

---

[No. 749.]

## H. P. PHILLIPS, RESPONDENT, *v.* WILLIAM WELCH ET AL., APPELLANTS.

JURISDICTION—QUESTION OF, RAISED BY THE COURT.—As every court is bound to know the limits of its own jurisdiction, it is the duty of the court to decide, *in limine*, the question of jurisdiction, although the parties before the court are willing to concede jurisdiction for the purpose of obtaining an opinion upon the matters in controversy.

CONTEMPT OF COURT—WHEN PROCESS IS CIVIL.—If the contempt consists in the refusal of a party to do something which he is ordered to do for the benefit or advantage of the opposite party, the process is civil, and he stands committed till he complies with the order. The order in such case is not punitive, but coercive.

IDEM—WHEN PROCESS IS CRIMINAL.—If the contempt consists in the doing of a forbidden act, injurious to the opposite party, the process is criminal, and conviction is followed by a penalty of fine or imprisonment, or both, which is purely punitive.

IDEM—APPELLATE JURISDICTION.—This court has no appellate jurisdiction in cases of contempt, where the proceeding is purely criminal.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The question of jurisdiction was not discussed by counsel. The facts are stated in the opinion.

*DeLong & Belknap and John R. Kittrell,* for Appellant.

( 187 )

*Robert M. Clarke and R. S. Mesick*, for Respondent.

By the Court, BEATTY, J.:

In the above-entitled action there was a final decree by which the waters flowing in King's cañon, in Ormsby county, were apportioned to the different parties, plaintiff and defendant, and each enjoined from diverting any portion of the waters awarded to the others. One of the defendants, E. D. Sweeney, was attached for an alleged violation of the decree, found guilty of a contempt of the court, and fined one hundred dollars. From that conviction he appeals to this court, entitling the case on appeal as above.

It was suggested to counsel, during the oral argument, that it was doubtful if this court had any jurisdiction in the matter, but the point was waived by the respondent (Phillips) at the time, and he has not adverted to it in his brief since filed. It has therefore become necessary for the court to decide, *in limine*, whether in a case like this, where the parties before the court are willing to concede jurisdiction for the purpose of obtaining our opinion upon the matters in controversy, we ought to raise the question of jurisdiction ourselves.

Upon due consideration we are satisfied we ought to do so. Every court is bound to know the limits of its own jurisdiction, and to keep within them. It is very true that the question of jurisdiction is often difficult of solution, and that argument of counsel is as essential to its proper determination as it is in any other class of questions; but we are nevertheless of the opinion that when a doubt is suggested as to our authority to decide a cause, if counsel decline to argue the point, we are bound to determine it without the aid of argument. Especially is this our duty where all the parties to be affected by our decision are not before us. In this case the state is an interested party, since the fine imposed upon Sweeney is payable to the state; and if consent could in any case confer jurisdiction, we are not permitted to assume it here, because the state is not represented upon this appeal, and has not consented to submit her rights to our decision.

Has this court then any appellate jurisdiction in this
case?   One of the propositions laid down by the appellant
in support of his assignments of error is, that "contempt
of court is a specific criminal offense."   If this proposition
is to be accepted as true, without qualification, and if the
process of attachment for contempt is' a criminal proceed-
ing, then, as this court has no appellate jurisdiction in
criminal cases, unless they amount to a felony, it follows
necessarily that it has no jurisdiction in this case.   But the
appeal is taken upon the assumption that the process
against Sweeney is not criminal, and that the judgment of
the court convicting him of the contempt is an order made
in the civil action of *Phillips* v. *Welch* after final judgment,
and is appealable under subdivision three of section 1391
of the compiled laws.   It is no doubt true that attachment
for contempt is sometimes to be regarded as process in a
civil action.   Blackstone (in Book 4, chap. 20) treats of
contempts under the head of summary convictions.   They
are classed with other misdemeanors, from which they are
distinguished only by the mode in which they are prose-
cuted, every superior court being necessarily invested with
jurisdiction to punish contempts of its authority by sum-
mary process.   But in enumerating the different species of
contempts, he mentions:   "6. Those committed by parties
to any suit or proceeding before the court; as by disobedi-
ence to any rule or order made in the progress of a cause;
by non-payment of costs awarded by the court upon a
motion; or by non-observance of awards duly made by
arbitrators or umpires after having entered into a rule for
submitting to such determination.   Indeed, the attachment
for most of this species of contempts, and especially for
non-payment of costs and non-performance of awards is to
be looked upon rather as a civil execution for the benefit of
the injured party, though carried on in the shape of a crim-
inal process for a contempt of the authority of the court,
and therefore it hath been held that such contempts, and
the process thereon, being properly the civil remedy of in-
dividuals for a private injury, are not released or affected
by the general act of pardon."

By parity of reasoning it would seem that such contempts would be appealable under the provision of our practice act above cited. But the question remains whether the contempt alleged against Sweeney is one of those, the process in which is regarded as a civil execution for the benefit of the injured party. It is probably comprised in the species described, but Blackstone does not say that every case comprised in this species is regarded as a civil proceeding. His language is, "most of this species," and the examples given in illustration are, non-payment of costs and non-performance of awards. These examples I think, clearly indicate the criterion by which it may be determined whether the process is civil or criminal. If the contempt consists in the refusal of a party to do something which he is ordered to do for the benefit or advantage of the opposite party, the process is civil and he stands committed till he complies with the order. The order in such case is not punitive, but coërcive. If, on the other hand, the contempt consists in the doing of a forbidden act, injurious to the opposite party, the process is criminal and conviction is followed by a penalty of fine or imprisonment, or both, which is purely punitive. In the former case the private party alone is interested in the enforcement of the order, and the moment he is satisfied, the imprisonment terminates; in the latter case the state alone is interested in the enforcement of the penalty. It is true the private party receives an incidental advantage from the infliction of the penalty, but it is the same sort of advantage precisely which accrues to the prosecuting witness in a case of assault and battery, the advantage being that the punishment operates *in terrorem*, and by that means has a tendency to prevent a repetition of the offense. The principle of discrimination between the civil and criminal process for contempt here indicated, though not expressly recognized in any of the cases that have fallen under our observation, is entirely consistent with all the decisions, and is the only means of rendering them consistent with each other. It may, therefore, be considered established by them.

The case of *New Orleans* v. *Steamship Company,* cited by

appellant to the point that contempt is a criminal offense, is very closely analogous to this. The company had procured an injunction against the city from the United States Circuit Court, and pending the proceedings the mayor of the city obtained an injunction from a state court against the company. For this he was attached and fined $300. The case was appealed to the Supreme Court of the United States, where a reversal of the judgment in the contempt proceeding was asked. But Judge Swayne, delivering the opinion of the court, said: "The fine of $300 imposed upon the mayor is beyond our jurisdiction. Contempt of court is a specific criminal offense. The imposition of the fine was a judgment in a criminal case. That part of the decree is as distinct from the residue as if it were a judgment upon an indictment for perjury committed in a deposition read at the hearing. This court can take cognizance of a criminal case only upon a certificate of division in opinion."

The other case cited by appellant to the same point (*B. & O. R. R. Co.* v. *Wheeling*, 13 Grattan's Va. R. 57), was where the defendant had been fined for disobeying an injunction *pendente lite*, and the supreme court of Virginia said: "As to the order of the circuit court in the proceeding for contempt, it is not an interlocutory order made in the cause, much less an order adjudicating the principles of the cause. A contempt of court is in the nature of a criminal offense, and the proceeding for its punishment is in the nature of a criminal proceeding, the judgment in such a proceeding can be reviewed by a superior tribunal, only by writ of error, and not always in that way."

These two cases clearly establish the following propositions: First. An act done by one party to an action in violation of the rights of another party, if it is a contempt, is a distinct criminal offense. Second. The proceeding to punish it is a distinct criminal proceeding; and, Third. The appellate court can have no jurisdiction of it except as a criminal case. As this court has no appellate jurisdiction in criminal cases, unless they amount to felonies, it follows that this appeal does not lie.

The decisions in the state of New York sustaining the

right of appeal from judgments or orders in proceedings for contempt, so far from being in conflict with this view, really sustain it. By the statute of New York, the process of attachment for contempt is not only a means of punishment but also of compensation to the injured party. His damages are computed and payment enforced in the proceeding, and it is for this reason that an appeal is allowed. In the case of *Ludlow* v. *Knox*, the defendant was fined for not producing his books before a referee. On appeal from the order the court said: "Counsel for respondent insists that the order is not appealable to this court, and that the appeal should, for this reason, be dismissed. If the proceedings are to be regarded as taken in the action of *Ludlow* v. *Knox*, the counsel is right in the position. * * * If the order is one not made in the action, but in a special proceeding instituted to redress an injury sustained by the plaintiff, caused by the violation of the order made in the action requiring the appellant to produce his books, etc., before the referee, it comes within subdivision 3" (section 11 of the code), "and is appealable to this court, as a final order made in a special proceeding affecting a substantial right. I think the order belongs to the latter class." (See the whole case, 7 Abbott's Pr. Rep. 416.)

It will be observed that in this case the contempt consisted in the refusal to do what was ordered, not in the doing what was forbidden. An appeal was allowed, however, in the subsequent case of the *Erie R. R. Co.* v. *Ramsay* (45 N. Y. 642), where the contempt alleged was a violation of an injunction. In that case the court merely adopted the decision in *Ludlow* v. *Knox*, assuming that under the statute of New York there was no distinction between the cases where the contempt consists in the refusal to do an act commanded, and where it consists in the doing of an act forbidden. This assumption was probably correct, for in both cases the proceeding was instituted for the recovery of damages by the injured party, and in both cases damages had been awarded.

In California an appeal was sustained in the case of *The People* v. *Charles P. O'Niel*, from a judgment convicting the defendant of a contempt of court. O'Neil was charged with violating an order made in a habeas corpus proceeding, and fined three hundred dollars for the contempt. He appealed to the supreme court, entitling his appeal as above. The attorney-general appears to have objected to the jurisdiction, but upon what ground it is not stated. The court simply say, touching this point: " We think the judgment appealed from is appealable. It is for money and sufficient in amount to give jurisdiction to this court." (47 Cal. 109.) The reason here assigned appears to be entirely inconclusive. It could have been urged with just as much force and propriety if the defendant had been fined three hundred dollars for assault and battery. The decision, moreover, appears to be in conflict with that in *Batchelder* v. *Moore* (42 Cal. 413), where a judgment for contempt was reviewed on certiorari, for if an appeal lies, certiorari does not. In the last named case Calderwood, who was not a party to the action, was fined five hundred dollars. O'Neil, who was not a party to the habeas corpus proceeding, was fined three hundred dollars. If O'Neil could appeal, it is difficult to see why Calderwood could not appeal, and if he could appeal he was not entitled to the writ of certiorari. Possibly the case of O'Neil may be considered as overruling *Batchelder* v. *Moore*, but the court do not avow any such intention; on the contrary, they cite that case as authority on another point. Ill considered as the case of O'Neil appears to have been, it *is* not entitled to much weight or authority; but if we were inclined to follow it, it would not help this appellant, for the amount of the judgment is not sufficient to give this court jurisdiction. We are not, however, inclined to follow that case; our conclusion being that we have no appellate jurisdiction in cases of contempt where the proceeding is, as it is in this case, purely criminal.

In addition to the authorities above cited, we refer to *Crosby's Case*, (3 Wilson, 188); *Yate's Case*, in its various forms, (in 4, 5, 6 and 9, Johnson's Reports,) and particularly to the opinion of Chief Justice Kent, (4 Johns. 370–75); *Ex parte*

*Kearney,* (7 Wheat. 38); *Passmore Williamson's Case,* (26 Penn. 20,) and the authorities there-cited.

For the reasons above stated, it is ordered that the appeal herein be dismissed.