STATE OF NORTH DAKOTA, *ex rel.* ALANSON W. EDWARDS, Plaintiff and Respondent, *v.* ALFRED C. DAVIS, Defendant and Appellant.

### Order Punishing For Contempt—Right of Appeal.

An order punishing a person for contempt in disobeying an injunction, where the contempt proceeding is not and cannot be used as a remedy to enforce obedience to the injunction or to indemnify the party injured by the contempt, is not an order made in an action or special proceeding, and is therefore not appealable. Such a contempt proceeding is not remedial in its character, but purely of a criminal nature, its object being exclusively to vindicate the authority of the court.

(Opinion Filed March 19, 1892.)

*A* PPAEL from district court, Cass county; Hon. RODERICK ROSE, Judge presiding.

*Alfred C. Davis* and *Benton & Amidon,* for appellant. *S. G. Roberts,* for respondent.

Proceedings on the relation of Alanson W. Edwards against Alfred C. Davis, for contempt of court. From an order adjudging defendant guilty, he appeals. Appeal dismissed.

Benton & Amidon, for appellant:

The judgment is appealable. Brinkley v. Brinkley, 47 N. Y. 40; Railroad Co. v. Railroad Co., 71 N. Y. 430; Carrington v. Railroad Co., 52 N. Y. 583. The judge presiding had no authority or jurisdiction to hear the proceeding, or render judgment. Wells on Jurisdiction, § 174; Klaise v. State, 27 Wis 462; Wallace v. Railroad Co., 25 Pac. Rep. 278; Gale v. Michie. 47 Mo. 326; State v. Shea, 95 Mo. 85; People v. O'Neil, 47 Cal, 109. The alleged restraining order was void because not issued. in a case provided by the statute for the allowance of an injunc-

tion.   Dickey v. Reed, 78 Ill. 261; Walton v. Develing, 61 Ill. 201; Darst v. People, 63 Ill. 306.

S. G. Roberts, for respondent:

The judgment herein is not appealable.   U. S. v. Hudson, 7 Cranch 32; First Cong. Church v. Muscatine, 2 Clark (Iowa) 69; State v. Morrill, 16 Ark. 384; Middlebrook v. State, 43 Conn. 267; People v. Wilson, 64 Ill. 195; Whittem v. State, 36 Ind. 212; *ex parte* Kearney, 7 Wheat. 38; New Orleans v. Steamship Co., 20 Wall. 387; Hagen v. Alsten, 9 Ala. 627; Cassart v. State, 14 Ark. 583; Tyler v. Hammersley, 44 Conn. 393; Watson v. Willins, 36 Miss. 331; Hays v. Fischer, 12 Otto 121; Mc-Kicken v. Perin, 20 How. 133; Larrabee v. Selby, 52 Cal. 506; Vilas v. Barton, 27 Vt. 56; State v. Giles, 10 Wis. 101.   The power of a court exercising equity power to punish, as a contempt, the violation of an injunction granted by the court, or a judge thereof, has never been questioned.   Neal v. Osborne, 15 How. Pr. 81; Wheeler v. Gilsey, 35 How. Pr. 139; Stimson v. Putnam, 41 Vt. 238; Poertner v. Russell, 33 Wis. 193.   The order of injunction could only be void for want of jurisdiction to issue it.   If it was improperly issued, then it is obligatory until vacated, or reversed by an appellate court, and must be respected until annulled by the proper authorities.   *In re* Cohen, 5 Cal. 494; Sullivan v. Judah, 4 Paige 442; People v. Berger, 53 N. Y. 409; Hilton v. Patterson, 18 Abb. 245.

The opinion of the court was delivered by

CORLISS, C. J.   This appeal is from a final order made in contempt proceedings adjudging the appellant, Davis, guilty of contempt in advising the disobedience of an alleged injunction order restraining the voting of certain stock by one E. O. Faulkner at a stockholders' meeting held to elect directors of the Argus Printing Company.   The appeability of this order is questioned.   It imposed a fine of $75, and ordered that Mr. Davis stand committed to the common jail of Cass county, in this state, until such fine should be fully paid to the clerk of the court making the order.   The authorities are in inextricable confusion on the question of the right to appeal in contempt

proceedings. A review of them will profit little. This inquiry is to be solved by our own statutes. Section 1 of the appeal law of 1891 provides that "a judgment or order in a civil action or in a special proceeding, in any of the district courts, may be removed to the supreme court by appeal, as provided in this chapter, and not otherwise." Section 24 of the same act provides that a final order affecting a substantial right, made in special proceedings, may be reviewed by appeal. Chapter 120, Laws 1891. It is obvious that the order appealed from is not an order in an action. It in no manner affects the merits of the action. It has no connection with any step taken or to be taken in the action itself. It determines no question in the action for or against either party. It does not affect the final judgment. The action can proceed as though it had never been made. It is an episode in an action. It is the vindication by the court of its authority. If it can be regarded as a proceeding in the action, still it is not an appealable order. Certainly it is not the final judgment in the action. Nor is it an order affecting a substantial right in an action, which, in effect, determines the action, and prevents a judgment from which an appeal might be taken. It does not involve the merits of an action. Neither is it one of the orders specifically enumerated in section 24 as appealable. It remains to be considered whether the order was one made in special proceedings, within the meaning of the appeal law. The New York authorities are cited to sustain the contention that it is such an order. An examination of these cases will disclose the fact that the contempt proceedings, which were there held to be special proceedings, were instituted, not primarily to vindicate the authority of the court, but under a statute authorizing such procedure to compel the contemnor, by way of fine, to make good to his antagonist the damage done the latter by the refusal of the former to obey an order or decree of the court. In some cases where the order has been held appealable, the proceeding was instituted as process to compel obedience to an order or decree in equity. Where a statute gives to the injured party a right to institute contempt proceedings to indemnify him against loss by reason of the disobedience by his antagonist of an order, judgment or decree, it

is clear that, while the proceeding is in name and form a contempt proceeding, it is not instituted for the sole purpose of vindicating the authority of the court, but as a remedy to the suitor, who has a right to insist on obedience to the mandate of the court, and therefore ought to be allowed to demand, as a matter of right, that, in a proper case, the court give him the benefit of its order or decree in his favor by so exercising its power to punish for contempt, in case of a disobedience thereof, as to indemnify him against injury by reason of such disobedience. The primary object of such a proceeding is indemnity to the litigant. Incidentally the court's authority is vindicated. The court, under the command of the statute, lends its contempt power to the suitor, who has been denied the fruits of an order or decree by the refusal of his opponent to obey it. Such a proceeding is therefore a remedy, and, not falling within the definition of an action, either civil or criminal, it is of necessity a special proceeding. "Every other remedy is a special proceeding." § 4812, Comp. Laws. It is necessary that the contempt proceeding should be remedial in its character to be a special proceeding. It is every other "remedy" that is a special proceeding. In New York the decisions stand upon a statute which expressly gives the injured party the legal right to institute and control contempt proceedings, to the end that the court may therein impose, as a punishment for the contempt, such damages as the injured party has sustained by reason of such contempt. This is apparent from the authorities. The leading case in that state on this point is Sudlow v. Knox, 7 Abb. Pr. (N. S.) 411. Speaking of the nature of the contempt proceedings the order in which was held appealable, the court said: "These were instituted and conducted under the provisions of the statute entitled 'Of proceedings as for contempt to enforce civil remedies and to protect the rights of parties in civil actions.'" The court say further: "Section 21 provides that, in case the fine imposed for indemnity of the party injured shall be paid to and accepted by him, it shall constitute a bar," etc. It is apparent that the contempt proceedings thus held to be special proceedings were, by force of a statute, remedial in their character. The act cited in the opinion

was passed to afford to the successful litigant a legal right to demand that the power of the court to punish for contempt be so exercised to enforce a decree or order in his favor as to indemnify him for damage sustained by the contempt. The other New York authorities follow the decision. The Michigan authorities belong to the same class. In People v. Simonson, 9 Mich. 491, the court said: "This is an appeal from an order made under section 4094 of Compiled Laws, punishing defendants for a contempt for violating an injunction, which the relator moves to have dismissed. The section is as follows: 'If an actual loss or injury has been produced to any party by the misconduct alleged, the court shall order a sufficient sum to be paid by the defendant to such party to indemnify him and to satisfy his costs and expenses, instead of imposing a fine upon such defendant; and in such case the payment and acceptance of such sum shall be an absolute bar to any action by such aggrieved party to recover damages for such injury or loss.' The order is final, and cannot be reviewed unless on an appeal from the order itself. It is more of a civil than of a criminal nature, its principal objects being to compel defendants to make compensation to the relator for the injury they have done him in violating the injunction, rather than to vindicate the dignity of the court and the majesty of the laws. For these reasons we are of the opinion the motion should be denied." In Romeyn v. Caplis, 17 Mich. 449, the court said: "It has been contended before us that the order in this case was not one from which an appeal could be taken, since the appellee did not claim that an actual loss or injury had been produced to the party by the misconduct alleged, and did not ask for any sum to indemnify him. I think that this position cannot be sustained. The injunction was an appropriate civil process, belonging to the remedy in the action in which it issued, and the proceeding for its violation was under the chapter entitled 'Of proceedings as for contempt to enforce civil remedies and to protect the rights of parties in civil actions.' The order complained of was final, and not merely a step in the course of the proceeding contemplating further action by the court in relation to the same matter, and it belonged to that

class of proceedings which are provided to secure obedience to the necessary processes of courts in civil cases. It adjudged the party guilty of willful disobedience of the injunction, and required him to pay a fine, under peril of imprisonment. It did not stop here. It expressly awarded to the complainant the costs and expenses incurred in prosecuting the contempt, and which were fixed in it at $10. This part of the order cannot be reconciled with the claim of the appellee that the prosecution of the contempt was only carried on by the complainant as the friend of the court, and that the infliction was for the sole purpose of vindicating the authority of the court. The essential character of the proceeding indicates very clearly that what was sought to be accomplished, and in fact done, was to be in keeping with the purpose of the statute which has been referred to."

In Wisconsin, as in New York and Michigan, there exist statutes providing for the punishment of contempt for the benefit of the injured party. The same distinction is there made. If the proceeding is carried on for the benefit of the successful litigant, the remedy is a special proceeding, and the order is appealable. Said the court in State v. Giles, 10 Wis. 101: "This is an appeal from an order of the circuit court of Jefferson county by which the sheriff was adjudged guilty of contempt for not executing a writ of assistance, and fined ten dollars and costs. The general rule in relation to conviction for contempt is that there is no appeal. But there is a very clear distinction between those proceedings for contempt which are merely in the nature of civil remedies for the benefit of the party injured, and those ai med at conduct which tends directly to interrupt the proceedings and impair the authority of the court. In respect to the latter, it is essential to the very object of granting the power to punish for contempt that it should not be subject to appeal. S uch being the general rule, the order in this case would not be appealable without an express statutory provision." The same distinction is stated *In re* Pierce, 44 Wis. 411-422; State v. Brophy, 38 Wis. 414; and *In re* Murphy, 39 Wis. 286. This last case is peculiarly in point. The appeal was from an order punishing the appellant for contempt in dis-

obeying an injunctional order.    There was a fine of $125 imposed.    The court held that the order was not appealable, saying:  "The defendant was convicted of willful disobedience of an order of the court, and was adjudged in contempt because of such disobedience, and fined therefor.   Looking at its results, whatever it may have been in its inception, the proceeding is not a controversy between certain parties to the civil action out of which it arose and the appellant, in which the former seek indemnity for the wrongful act of the latter, but a public prosecution, by which the state seeks to vindicate the authority of one of its courts, and to punish the defendant for an alleged interference therewith.   It is quite immaterial that the alleged contempt was committed in the progress of a civil action.   It was essentially a criminal contempt, and the court sought to punish it as such by imposing a fine upon the defendant which, if paid, goes to the school fund.    No party to the civil cause has any more interest in the conviction and punishment of the appellant than has any other citizen of the state.   That an appeal does not lie from a judgment or order in a criminal case or proceeding has been frequently adjudicated by this court, and is now too well settled to be questioned or doubted."   After citing the cases the court continues:   "In the above cases the distinction between those proceedings for contempt, which merely result in enforcing civil remedies, and those which result in the imposition of criminal punishment, as affecting the right of appeal, is stated and considered."   In Shannon v. State, 18 Wis. 604, the contempt order held appealable awarded to the party in whose favor the injunctional order, disobeyed by the appellant, had been made, damages sustained by the former by reason of such contempt.   This was under the Wisconsin statute.   See this statute, quoted at length *In re* Pierce, 44 Wis. 411, at page 422.   In Ballston Bank v. Marine Bank, 18 Wis. 490, the order held appealable was made in proceedings to punish for contempt a third person, having property of the judgment debtor, who refused to answer proper questions in supplementary proceedings.   Such a contempt proceeding is clearly a remedy to enforce the rights of the judgment creditor under his order in supplementary proceedings, and is therefore

a special proceeding. We also have a statute giving the judgment creditor this contempt remedy. § 5185, Comp. Laws. The same distinction is clearly stated in an article in the fifth volume of the Criminal Law Magazine, at page 652. After referring to the decision in Yates v. People, 6 Johns. 337, holding that a conviction for a criminal contempt was subject to review on appeal, the learned writer says: "The same question subsequently came before the same court in Yates v. Lansing, 9 Johns. 395, and the doctrine of the former case was overthrown on all points, and has never been the law of New York from that date to this, though, as elsewhere seen, appeals are constantly prosecuted in that state from judgments in proceedings as for contempt to enforce civil remedies;" referring to the leading New York case of Sudlow v. Knox, 7 Abb. Pr. (N. S.) 411, already referred to, and also to the late decision resting upon that case. In Rapelje on Contempt it is said, at page 200: "In New York and several other states final orders punishing a party in remedial proceedings for contempt, e. g., orders imposing a fine in the nature of an indemnity to a party suffering injury by reason of the alleged contempt, are appealable." In this connection the writer cites the cases already referred to in this opinion, with others.

There is another class of contempt proceedings which are purely remedial in their character. This class embraces such contempt proceedings as were resorted to by a successful litigant in equity to secure the fruits of his litigation, in case of the refusal of the defeated party to obey the order or decree made in such action. Such a proceeding, while in form a contempt proceeding, was never instituted primarily to vindicate the court's authority, but for the sole purpose of giving the successful suitor the fruits of his litigation. It was, in legal effect, process to enforce an order or decree. It was one of the remedies by which equity compelled obedience to its mandates. No execution could issue out of chancery. A contempt order was the process of that court. In such a case, as in the case of a proceeding under a statute giving the injured party indemnity for damages because of the contempt of his antagonist, there is a legal right in the suitor to demand that the proceedings be instituted. He

may control them.    They are for his benefit.    They are the remedy which the law affords him, that he may secure the fruits of his litigation.    He may insist that the court shall put forth in his behalf its power to punish for contempt.    The proceedings are remedial in their character.    In a proper case the suitor has a legal right to an order punishing his opponent for contempt, where the contempt proceedings are of this character. A denial of that right will be reviewed on appeal, and the appellate court will compel the inferor tribunal to give the successful litigant this process to secure the benefits of his victory.    Ballston Bank v. Marine Bank, 18 Wis. 490;   Livingston v. Swift, 23 How. Pr. 1;   Rap. Contempt, § 149;   Wyatt v. Magee, 3 Ala. 94.

But the proceeding culminating in the order appealed from in this case was not instituted to give to the party who had obtained the injunction, damages because of the disobedience of such injunction under the advice of the appellant.    Nor could such a contempt proceeding be here instituted.    We have no statute authorizing it, and it was unknown to the common law. Neither was the order made as a means of securing to the suitor the benefit of his injunction.    The order merely imposed a fine to be paid to the clerk of the court, and directed that appellant stand committed until it was paid.    The act restrained had been done, and could not be undone.    No amount of imprisonment could result in an obedience to the injunctional order.    It was beyond the power of the party enjoined to refrain from voting the stock, for the stock had been already voted by him, and the act was irrevocable.    The person in whose favor the injunctional order had been made could not, therefore, insist that the appellant be punished, either to indemnify the former or to compel an observance of the injunctional order.    He had no right to insist that contempt proceedings be instituted as his legal remedy for the wrong done.    Their only possible scope and object was the vindication of the court's authority.    A contempt proceeding, when instituted for this purpose is not a " remedy," as that word is used in defining a special proceeding. Perhaps it might be proper, in common parlance, to speak of such a proceeding as the remedy of the state to compel respect for its authority as lodged in its courts.    But it is not such a

remedy that the Code contemplates. Such a construction would lead to the result that every proceeding to punish a contempt in open court is a special proceeding, because it is a remedy, and therefore an order made in such a proceeding, refusing to punish a person guilty of such a.contempt, would be appealable, because it would be final, and would affect a substantial right —the right of the court to vindicate its own authority. Surely it would be final, and affect a substantial right, if it punished the defendant in the contempt proceeding. It would, indeed, seem anomalous that an appellate court should have power to compel an inferior court to punish a criminal contempt—an insult to the judge or a willful breach of peace in open court, which such inferior court had refused to punish—or that it should have power to review the action of such inferior court, and discharge one whom that court had adjudged guilty of such a contempt. It is true that the judge who presides over the court against which the contempt is directed is not regarded as having any personal interest in the matter. The law punishes the contemnor out of no personal consideration for the judge. The punishment is not meted out as "balm to hurt mind." Nor is there in the law aught of malice against him who is punished. The power is exercised by the court as the representative in this respect of the people—the ultimate sovereigns—and in their interest and for their good. The maintenance of the authority of the judiciary is indispensable to the stability of the government. Having power over neither the purse nor the sword, it is helpless and defenseless, open to wanton insult, the object of universal derision and contempt, unless the people have by necessary implication, vested in the judiciary authority to assert its power, to compel respect and obedience to its orders and decrees and to preserve order and decorum in open court by calling upon the physical power of the state to uphold this independent department of the government in its full integrity. The people, by the very act of creating a judicial department, necessarily vested in it this prerogative. This power to punish for contempt, which inheres in the very constitution of every court, is to be exercised solely for the public good, that a branch of the people's government may not lose its

efficacy, and thus the government be brought to anarchy.   But it does not at all follow that, because the state alone has any interest in the punishment of such a contempt, the power to punish it does not reside exclusively in the tribunal insulted or defied.   On the contrary, there has been only one thought touching this question.   All the cases speak of this power as being lodged in only the tribunal toward which the contempt is directed.   Rap. Contempt, § 13, and cases cited.

A superior court, unless such authority is clearly conferred, should not be regarded as having been invested with power by an appeal to punish for such a contempt directed against an inferior court or to discharge one whom such inferior court has adjudged guilty of such a contempt.    Of course, when the order is void, the contemnor may be released from imprisonment or the payment of a fine.    Whether the remedy is *habeas corpus* or *certiorari*, or whether either may be resorted to, we do not decide. We do not believe that such a contempt proceeding was intended to be designated as a "remedy," in the sense in which that word is employed in defining a special proceeding.    We hold that a contempt proceeding, whose sole object is to vindicate the authority of the court, is not such a remedy, and therefore that the proceeding is not a special proceeding.    It is immaterial what is the character of the act punished—whether it is defiance in open court or disobedience to the mandate of the court in some action or proceeding therein.   The object of the contempt proceeding determines its character.   The proceeding culminating in the order appealed from was one in which, as we have already seen, the person in whose favor was made the injunctional order disobeyed had no interest whatever; nor could he, under our laws, have any possible interest therein.   See, as stating clearly the distinction between criminal and civil contempts, State v. District Court, 40 Minn. 5, 42 N. W. Rep. 598; People v. Court of Oyer and Terminer, 101 N. Y. 245, 4 N. E. Rep. 259; *In re* Chiles, 22 Wall. 157.   As we have reached the conclusion that the appeal must be dismissed, we are not at liberty to pass upon the merits.   The order provides for imprisonment in case the fine is not paid.   In case it is thus enforced, and perhaps if it is not thus enforced, the appellant

may raise by the appropriate remedy, the question whether that order is void, or whether the injunctional order was not void. If this latter order was void, and not merely irregular, then there was no contempt, and on *habeas corpus* appellant would be discharged. It is not a contempt to refuse to recognize a void order. Rap. Contempt., § 33, and cases cited; *Ex parte* Fisk, 113 U. S. 714–718, 5 Sup. Ct. Rep. 724; Lester v. People (Ill. Sup.), 23 N. E. Rep. 387–389; State v. Milligan, 3 Wash. 144, 28 Pac. Rep. 369; *In re* Sawyer, 124 U. S. 200, 8 Sup. Ct. Rep. 482. It appears that on the hearing on the return of the order to show cause why appellant should not be punished for contempt, the Hon. RODERICK ROSE, judge of the district court of the fifth judicial district, was requested by the Hon. WILLIAM B. McCONNELL, the judge of the third judicial district, to sit in his place. Judge McCONNELL was present in the court room at the time, and it is not pretended that he was in any manner disqualified from hearing the matter. The order disobeyed was an order of the district court of the third district. The contempt, if any, was a contempt of that court. That court, and that court only, could punish such contempt. No other judge had authority to act as the judge of that court, except in the manner pointed out by the constitution and the statute. It will be noticed that the act of 1890 (chapter 61) authorizes one judge to hold a term of court in another district upon proper request, whenever the judge of that district is unable for any reason to act. But it is not pretended that Judge ROSE was requested to hold a term of court, nor was he actually engaged in holding such term at the time he made the contempt order appealed from. On the contrary, the request was that he act in this special matter. Now, to authorize a judge of another district to act in any case or cases specially as distinguished from his holding a term of court, the statute says the judge for whom he acts must be disqualified for some reason. Of this there appears to be no pretense. It may therefore be questionable whether the court of the third judicial district has ever made any order punishing appellant for contempt—whether the order is not a lifeless form. The point, however, we do not decide. There could be no such thing as the action of the court of the third district without the

action of the judge of that court. The judge must either be the judge of that court generally or one specially authorized to act as a judge thereof. The appeal from the order herein is dismissed. All concur.