# EX PARTE GEORGE C. WHITMORE.

9    441
10   238
f10  253
35*  524
37*  462

9    441
13   18;

TRIAL.—CHANGING VENUE.—INTENDMENTS IN FAVOR OF ORDER.—
The court of the first district made an order changing the
venue to the third district on its own motion; *held*, that the
first district court had jurisdiction to make the order; that
the order conferred jurisdiction on the third district court;
that such order if erroneous was appealable, and appeal was
the only proper remedy to correct it, and that the order was
made for sufficient reasons known to the court.

INJUNCTION.—FINAL DECREE.—ORDER CONTINUING.—Where, upon
the allowance of an appeal, in a water case, in which the
decree adjudicated rights in the water of a stream, and made
a division thereof, and the court refused to suspend an
injunctive order contained in the decree, the lower court
retains jurisdiction of the case to punish, as a contempt, a
violation of the injunctive order.

CONTEMPT.—PUNISHMENT.—IMPOSITION OF COSTS.—In cases of
criminal contempt the district courts of Utah Territory in
addition to a fine, or fine and imprisonment, within the limits
of the punishment provided by statute, may impose costs upon
the defendant under the general statute authorizing costs to be
assessed whenever a fine is assessed.

ID.—CIVIL CONTEMPTS.—DISTINCTION.—APPEAL.—Where a contempt
proceeding is instituted, under a statute authorizing such pro-
cedure, to compel the contemnor to make good by way of fine
to his antagonist the damages resulting from the refusal of
the contemnor to obey an order of the court, or where the
contempt proceeding is instituted not to vindicate the authority
of the court, but simply to compensate the opposite party, such
a proceeding is one for a civil contempt and is appealable
under the general statutes relating to appeals in special pro-
ceedings.

ID.—CRIMINAL CONTEMPT.—DISTINCTION.—APPEAL.—But where a
contempt proceeding is instituted in the name of the people to
vindicate the authority of the court as an instrument of public
justice and not in the interest of any individual litigant for a
money indemnity except it be incidentally, it is not appealable

except by the terms of some express statute, and there is none such in Utah Territory.

Id.—Punishment.—Imprisonment.—Costs.—Where a contemnor is sentenced to pay a fine and costs for a criminal contempt, the court may order the contemnor imprisoned until such fine and costs are paid at the rate of one day for each dollar of such fine and costs.

Application for a writ of *habeas corpus* in the supreme court to review a conviction for contempt and an attempted appeal therefrom in the third district court, Hon. Charles S. Zane, judge. The following further facts are stated in addition to what is stated in the opinion:

The suit of *L. A. Scott Elliot* v. *George C. Whitmore and another* was instituted to adjudicate water rights in a certain stream. The cause was tried before Hon. H. P. Henderson and a decree rendered adjudging defendants to be the owners of all the waters of the stream. This decree was reversed on appeal and reported at 8 Utah, 253. The cause was remanded to take further evidence. Thereupon Hon. John W. Blackburn, judge, made the order changing the venue. The cause was tried before Hon. J. H. Harris as referee, who reported his findings and recommendations for a decree to the court, where they were confirmed. The decree gave 67-150 of a cubic foot per second to the defendants and the remainder of the water to the plaintiff, and ordered a measuring box put into defendants' ditch which would be self regulating, permitting 67-150 of a cubic foot per second to run along defendants' ditch and returning the rest of the water into the stream. The decree contained a perpetual injunction against the defendants taking more than their quantity of water, and a perpetual injunction against interfering with the measuring box. The defendant George C. Whitmore tore out the measuring box and was convicted of taking more than 67-150 of a cubic foot per second from the waters of the stream. He attempted to appeal from this conviction.

*Messrs. Brown and Henderson,* for the applicant.

*Mr. Charles S. Varian,* against the application.

*Messrs. Zane and Putnam* also filed a brief against the application.

MINER, J.:

The petitioner George C. Whitmore was adjudged guilty of a specific and willful contempt of the authority of the third district court in violating an injunction contained in a final decree in a case wherein one L. A. Scott Elliot was plaintiff and said George C. Whitmore and another were defendants.

Having been found guilty of such contempt, by the third district court, he was sentenced to pay to the people of the Territory of Utah a fine of $25 and the cost of the proceedings taxed at $159.80, and in default of the payment of said fine and costs, to be committed to the custody of the sheriff of Salt Lake county and be imprisoned in the county jail of said county one day for each dollar of fine, unless sooner discharged in due course of law. Whitmore refused to pay the fine and costs, but filed a bond securing payment of the fine and costs with a motion of appeal from the conviction and judgment of contempt, and now brings his writ of *habeas corpus* and asks to be released from imprisonment under such conviction; the principal grounds being: *First,* that his appeal supercedes the judgment and conviction; *second,* that said court had no jurisdiction to render the decree or punish for contempt because the said cause was first pending in the first district court, and that said court upon its *own motion* transferred said cause to the third district court without any authority therefor; *third,* that costs were illegally imposed as a penalty without authority of the statute.

We will first consider the question raised as to the jurisdiction of the court.

If the court had jurisdiction of the person of the defendant and of the subject matter out of which the alleged contempt arose, then the door for release by means of a writ of *habeas corpus* is closed, except it may be in cases where excess of jurisdiction is clearly apparent. *Ex parte Whetstone, ante;* Rapalge on Contempt, sec. 155, 157; *Ex parte Ferry,* 128 U. S. 306; *Ex parte Kearney,* 7 Wheat. 45; *Ex parte Taylor,* 149 U. S. 180; *Ex parte Frederick,* 149 U. S. 70.

It appears that the first district court at Provo made an order in this case, December 27, 1892, which reads as follows: " In this case the court on its own motion orders that this case be transferred to the third district court at Salt Lake City for further proceedings."

On February 13, 1893, the third district court, by consent of the attorneys. for the respective parties, ordered that the case be referred to J. H. Harris as sole referee to try all issues in the case . and report findings of fact and conclusions of law to the third district court. In pursuance of such an order testimony was taken before such referee by the respective parties, and a decree was rendered upon such testimony and report so taken and filed. A motion for new trial was also made by the defendant, and at no time was any objection made to the jurisdiction of the court or to any of such proceedings.

Our statute authorizes the court to change the place of trial upon its own motion if the parties do not agree, but in that case the cause must be transferred to the nearest court. The presumption follows that the parties did not agree and that there was good cause known to the judge for transferring the cause to the third district court. C. L. 1888, sec. 3199. *Emory* v. *Hardy,* 94 N. C. 787; *Cart-*

*wright* v. *Belmont*, 58 Wis. 570; *Mining Co.* v. *Mfg. Co.*, 4 Nev. 222.

It does not appear that any motion was made in the third district court to transfer the case. That court was not bound of its own motion to change the place of trial and the right of either party to try the case in the first district court was a right that they could waive. *Mining Co.* v. *Mfg. Co.*, 4 Nev. 222; *Watts* v. *White*, 13 Cal. 321–4, sec. 3197, C. L. 1888; *Vaughn* v. *Dixon*, 32 Pac. Rep. 358; *Solomon* v. *Norton*, 11 Pac. Rep. 108; *R. R. Co.* v. *McBride*, 141 U. S. 127.

The order changing the place of trial from the first district court was an appealable order, and if erroneous, an appeal was the proper remedy to correct it. C. L. secs. 3635, 3652; *Clark* v. *Lyon*, 8 Nev. 181; *Machine Co.* v. *Cole*, 62 Cal. 311; *Gage* v. *Downey*, 79 Cal. 140.

We think the third district court had jurisdiction over the subject-matter of the suit and over the parties thereto.

It is also contended that the imposition of costs as a part of the punishment was illegal and that the court exceeded its jurisdiction in this respect and that the imprisonment is indefinite.

Sec. 5113, C. L. 1888, provides that a judgment that a defendant pay a fine may also provide that he be imprisoned until the fine is satisfied, specifying the extent of the imprisonment, which cannot exceed one day for every one dollar of fine.

Secs. 5258, 5259, 5260 and 5344, C. L. 1888, provides that costs may be assessed against the party where by law the courts are authorized to assess a fine, and the imprisonment cannot exceed one day for each dollar of fine and costs imposed.

Secs. 3026 and 3830, C. L. 1888, authorize the court to enforce its orders, and in case of contempt to impose a

fine not exceeding two hundred dollars, or imprisonment for five days, or both such fine and imprisonment.

The contemnor was convicted of willfully and contemptuously violating an order, decree and injunction of the court in removing the measuring box placed in the channel of the stream for the purpose of measuring water and diverting the waters of the stream, in direct violation and disobedience of such injunctional order.

At common law the power to punish for contempt was unlimited, depending upon the discretion of the court imposing the sentence.    Under the statutes of this Territory the power of the court to impose punishment is limited by the statute.    The contempt charged against the contemnor and for which he was convicted was of a criminal character and the proceedings for its punishment is in the nature of a criminal proceeding, and the above provisions of the statute—in so far as applicable—apply to all other criminal cases not otherwise specially provided for, and to cases of contempt—when criminal—as well as to other misdemeanors.

The fine and costs imposed in such a case is inflicted for the public good in order to secure obedience to lawful authority; the order and sentence to imprisonment, one day for each dollar of fine and costs, in default of its payment, is but a mode provided by statute for the enforcement of the judgment.    The power to enforce an order or judgment is incident to the power given to the court to impose it.

In this case the contempt consisted in doing a forbidden act that was not only injurious to the opposite party, but was a contemptuous violation of the express command of the court.    The process was therefore criminal in its nature and the conviction was properly followed by the imposition of a fine and costs that did not exceed in

amount the sum that the court was authorized to impose. The judgment that the contemnor be imprisoned one day for each dollar of fine and costs, was within the power of the court to impose and was not excessive or uncertain as to the period of imprisonment. Rapalje on Contempt, secs. 128, 129; *Ex parte Sweeney*, 18 Nev. 79; *Fisher* v. *Hayes*, 6 Fed. 71; *Ex parte Crittendon*, 7 Pac. C. L. J. 483; *State* v. *Davis*, 51 N. W. 942; *Phillips* v. *Welch*, 11 Nev. 187; *People* v. *Reggel*, 8 Utah, 21, 28 Pac. Rep. 955.

The petitioner also contends that the commitment is illegal and void because it was issued after the petitioner, the defendant in the action, had appealed the case to the supreme court, and while said appeal was pending and that such appeal supersedes the order of commitment. In allowing the appeal with the supersedeas bond, the third district court expressly refused to suspend the injunction; the injunction continued to remain in force and was not rendered inoperative by the appeal or the giving of the supersedeas bond. 2 High on Injunction, p. 1273; *Mining Co. in re.*, 27 Fed. Rep. 795; *Hovey* v. *McDonald*, 109 U. S. 150; *Leonard* v. *Land Co.*, 115 U. S. 465; *Mining Co.* v. *Mining Co.*, 5 Utah, 153; *Knox* v. *Haishman*, 132 U. S. 16.

The petitioner also contends that the appeal taken from the order and conviction for contempt in this proceeding supersedes the order of commitment, and that he is therefore entitled to his discharge.

The authorities bearing upon the question as to the right of a party to appeal from a judgment of conviction in a contempt proceeding seem to be in great confusion, but upon a careful examination it will be found that this condition results largely from the different provisions of the statutes bearing upon that question and upon the question as to whether or not the contempt charged was of a civil or criminal nature. It is unquestionably true that every superior court of record, at common law, is the sole judge

of contempts against its authority and dignity, and the judgment of every such court in cases of contempt, at common law, is final and conclusive and not reversible by appeal or otherwise unless specially authorized by statute.

Counsel for the contemnor insists that the judgment of contempt was a civil proceeding, and that sec. 3632 C. L. 1888, which provides that "a judgment or order in a civil action except when expressly made final, may be reviewed as prescribed in this code and not otherwise," and sec. 3635, sub. 1, which provides that "an appeal may be taken from a final judgment in an action or special proceeding commenced in the court in which the same is rendered," authorize an appeal from the judgment in question and that the appeal was taken under that section.

It is not contended that the appeal was taken under secs. 5134, 5136, providing for appeals in criminal cases, nor that any certificate from the judge was obtained under sec. 5142 C. L. 1888, certifying that probable cause for appeal existed.

Sec. 3821 C. L. 1888, sub. 5, provides that the disobedience of any lawful judgment, order or process of the court is contempt of the authority of the court. Such contempt is punishable as provided by sec. 3830.

In the case of *State ex rel. Edwards* v. *Davis,* reported in 51 N. W. Rep. 942, the defendant was adjudged guilty of contempt in advising the disobedience of an injunction order restraining the voting of certain stock at a stockholders' meeting. In this case the court imposed a fine of $75 and ordered the defendant to stand committed until the fine was paid; and under a statute very similar to our own, the court held there was no appeal from such order. The court said:

"It is obvious that the order appealed from is not an order in an action. It in no manner affects the merit of the action. It has no connection with any step taken or

to be taken in the action itself. It determines no question in the action for or against either party. It does not affect the final judgment. The action can proceed as though it had never been made. It is an episode in an action. It is the vindication by the court of its authority. If it can be regarded as a proceeding in the action, still it is not an appealable order. Certainly it is not the final judgment in the action. Nor is it an order affecting a substantial right in an action, which, in effect, determines the action, and prevents a judgment from which an appeal might be taken. It does not involve the merits of the action. It remains to be considered whether the order was one made in special proceedings, within the meaning of the appeal law. The New York authorities are cited to sustain the contention that it is such an order. An examination of these cases will disclose the fact that the contempt proceedings, which were there held to be special proceedings, were instituted, not primarily to vindicate the authority of the court, but under a statute authorizing such procedure to compel the contemnor, by way of fine, to make good to his antagonist the damage done the latter by the refusal of the former to obey an order or decree of the court. In some cases where the order has been held appealable, the proceeding was instituted to compel obedience to an order or decree in equity.

" Where a statute gives to the injured party a right to institute contempt proceedings to indemnify him against loss by reason of the disobedience by his antagonist of an order, judgment or decree, it is clear that while the proceeding is in name and form a contempt proceeding, it is not instituted for the sole purpose of vindicating the authority of the court, but as a remedy to the suitor, who has a right to insist on obedience to the mandate of the court, and therefore ought to be allowed to demand, as a

matter of right, that in a proper case, the court give him the benefit of its order or decree in his favor by so exercising its power to punish for contempt, in case of a disobedience thereof, as to indemnify him against injury by reason of such disobedience. The primary object of such a proceeding is indemnity to the litigant. Incidentally the court's authority is vindicated. The court, under the command of the statute, lends its contempt power to the suitor, who has been denied the fruits of an order or decree by the refusal of his opponent to obey it. Such a proceeding is therefore a remedy, and, not falling within the definition of an action, either civil or criminal, is of necessity a special proceeding. It is necessary that the contempt proceeding should be remedial in its character to be a special proceeding. It is every other " remedy " that is a special proceeding.

"In New York the decisions stand upon a statute which expressly gives the injured party the legal right to institute and control contempt proceedings, to the end that the court may therein impose, as a punishment for the contempt, such damages as the injured party has sustained by reason of such contempt. This is apparent from the authorities. The leading case in that state on this point is *Ludlow* v. *Knox*, 7 Abb. Pr. (N. S.) 411. Speaking of the nature of the contempt proceedings the order in which was held appealable, the court said: "These were instituted and conducted under provisions of the statute entitled, 'of proceedings as for contempt to enforce civil remedies and to protect the rights of parties in civil actions.'" The court says further: "Section 21 provides that, in case the fine imposed for indemnity of the party injured shall be paid to and accepted by him, it shall constitute a bar," etc. It is apparent that the contempt proceeding thus held to be special proceedings were, by force of a statute, remedial in their character."

The Michigan authorities belong to the same class. In *People* v. *Simpson*, 9 Mich. 491, the court said:

"This is an appeal from an order made under section 4094 of the compiled laws, punishing defendants for a contempt in violating an injunction, which the relator moves to have dismissed. The section is as follows: 'If an actual loss or injury has been produced to any party by the misconduct alleged, the court shall order a sufficient sum to be paid by the defendant to such party to indemnify him and to satisfy his costs and expenses, instead of imposing a fine upon such defendant; and in such case the payment and acceptance of such sum shall be an absolute bar to any action by such aggrieved party to recover damages for such injury or loss.' The order is final and cannot be reviewed unless on an appeal from the order itself. It is more of a civil than of a criminal nature, its principal objects being to compel defendants to make compensation to the relator for the injury they have done him in violating the injunction, rather than to vindicate the dignity of the court and the majesty of the laws. For these reasons we are of the opinion the motion should be denied."

In *Romeyn* v. *Caplis*, 17 Mich. 449, the court said:

"It has been contended before us that the order in this case was not one from which an appeal could be taken, since the appellee did not claim that an actual loss or injury had been produced to the party by the misconduct alleged, and did not ask for any sum to indemnify him. I think this proposition cannot be sustained. The injunction was an appropriate civil process, belonging to the remedy in the action in which it issued, and the proceedings for its violation was under the chapter entitled 'of proceedings as for contempt to enforce civil remedies and to protect the rights of parties in civil actions.'"

The order complained of was final, and not merely a step in the course of the proceeding contemplating further

action by the court in relation to the same matter, and it belongs to that class of proceedings which are provided to secure obedience to the necessary processes of courts in civil cases. The essential character of the proceeding indicates very clearly that what was sought to be accomplished, and in fact done, was to be in keeping with the purpose of the statute which has been referred to. The case of *Harris* v. *Harris*, 35 Mich. 142 and *Riple* v. *Jones*, 33 Mich. 303 were brought under the similar statute. The statutes of Michigan are wholly unlike those of Utah.

In Wisconsin, as in New York and Michigan, there exist statutes providing for the punishment of contempt for the benefit of the injured party. The same distinction is there made. If the proceeding is carried on for the benefit of the successful litigant the remedy is a special proceeding, and the order is appealable. Said the court in *State* v. *Giles*, 10 Wis. 101: "This is an appeal from an order of the circuit court of Jefferson county, by which the sheriff was adjudged guilty of contempt for not executing a writ of assistance, and fined ten dollars and costs. The general rule in relation to conviction for contempt, is that there is no appeal. But there is a very clear distinction between those proceedings for contempt which are merely in the nature of civil remedies for the benefit of the party injured, and those aimed at conduct which tends directly to interrupt the proceedings and impair the authority of the court. In respect to the latter, it is essential to the very object of granting the power to punish for contempt, that it should not be subject to appeal. Such being the general rule, the order in this case would not be appealable without an express statutory provision."

The same distinction is stated in *Re Pierce*, 44 Wis. 411, 422; *State* v. *Brophy*, 38 Wis. 414; and in *Re Murphy*, 39 Wis. 286. This latter case is in point. The appeal was from an order punishing the appellant for contempt

in disobeying an injunctional order. The court held the order was not appealable, saying: "The defendant was convicted of willful disobedience of an order of the court, and was adjudged in contempt because of such disobedience and fined therefor. Looking at its results whatever it may have been in its inception, the proceeding was not a controversy between certain parties to a civil action out of which it arose and the appellant, in which the former seeks indemnity for the wrongful act of the latter, but a public prosecution, by which the state seeks to vindicate the authority of one of its courts, and to punish the defendant for an alleged interference therewith. It is quite immaterial that the alleged contempt was committed in the progress of a civil action. It was essentially a criminal contempt, and the court sought to punish it as such by imposing a fine upon the defendant which, if paid, goes to the school fund. No party to the civil cause has any more interest in the conviction and punishment of the appellant than has any other citizen of the state. That an appeal does not lie from a judgment or order in a criminal case or proceeding has been frequently adjudicated by this court, and is now too well settled to be questioned or doubted."

The same distinction is clearly stated in an article in the fifth volume of the Criminal Law Magazine, at page 652. After referring to the decision in *Yates* v. *People,* 6 Johns. 337, holding that a conviction for a criminal contempt was subject to review on appeal, the learned writer says: "The same question subsequently came before the same court in *Yates* v. *Lansing,* 9 Johns. 395, and the doctrine of the former case was overthrown on all points, and has never been the law of New York from that date to this, though, as elsewhere seen, appeals are constantly prosecuted in that state from judgments in proceedings as for contempt to enforce civil remedies;" referring to the

leading New York case of *Ludlow* v. *Knox*, 7 Abb. Pr.
(N. S.) 411, already referred to, and also to the late decision
resting on that case.

There is another class of contempt proceedings which
are purely remedial in their character. This class embraces
such contempt proceedings as were resorted to by a suc-
cessful litigant in equity to secure the fruits of his litiga-
tion, in case of the refusal of the defeated party to obey
the order or decree made in such action. Such a proceed-
ing, while in form a contempt proceeding, was never in-
stituted primarily to vindicate the court's authority, but
for the sole purpose of giving the successful suitor the
fruits of his litigation.

The proceeding in this case which culminated in the
conviction appealed from, was not instituted to bestow the
damages to be recovered upon Elliot because his individual
rights under the injunctional order, had been infringed
upon. The proceeding was brought in the name of the
people of the Territory, for the purpose of punishing the
party who had violated an order of the court. Elliot ob-
tains no pecuniary benefit from the order of conviction.
If he had any remedy for his damages it was not under
this proceeding. The fine, if paid, in this proceeding, goes
to the Territory and not to Elliot. The act restrained
had been done and it was out of the petitioner's power to
undo it; the water had been appropriated by him and the
measuring box had been taken away and destroyed in vio-
lation of the express order of the court. The main object
of the proceeding was to vindicate the authority of the
court. Where the contempt is such that it results in a
violation of the rights of the public, or of the rights of
an individual which have been adjudicated and fixed by
the court, and a punishment is imposed in the interest of
public justice, and not in the interest of any individual
litigant as a money indemnity, the offense is necessarily of

a public or criminal nature, and is clearly covered and made punishable by our statute as a public offense.

In such cases if a fine is imposed, its limit is fixed and determined by the statute, and is not fixed by the injury demanded or sustained by the individual injured; the proceeds when collected, go into the public treasury and are not for the benefit of the party injured.

This fine is a punishment and not an indemnity and if imprisonment is also imposed, it is in the interest of the public justice and becomes partly a penalty, and in no way becomes an indemnity to the individual injured. *People* v. *Court of Oyer and Terminer*, 101 N. Y. 248.

Under our statutes these acts of disobedience of the lawful judgment, order and process of the court both in their origin and punishment partake of the nature of crimes which are a violation of a public law, and while there may be traces tending to the protection of a private right, yet the whole aim, purpose and object is the punishment for the violation of a public law and order in the vindication of public justice, and, hence, may be properly denominated criminal contempts.

So under our statutes all the elements of willfulness or evil intention enter into and characterize the acts charged and punished. The statute defines some of them as disorderly, contemptuous behavior to the court or judge, tending to interrupt the course of justice, deceit or abuse of the process or proceedings of the court by a party, to an action or special proceeding, disobedience of any lawful judgment, order, or process of the court.

Under our statute this offense is punishable by fine and imprisonment. It is an offense public in its nature, which tends to cast discredit upon the administration of public justice. Rapalje on Contempt, sec. 21.

It would indeed seem anomalous that an appellate court should have the power to compel an inferior court to pun-

ish a criminal contempt—an insult to the judge or a willful breach of peace in open court, a willful disobedience of a lawful order or judgment, which such inferior court had refused to punish—or that it should have power to review the action of such inferior court, and discharge one whom that court had adjudged guilty of such contempt. "It is true that the judge who presides over the court against which the contempt is directed is not regarded as having any personal interest in the matter. The law punishes the contemnor out of no personal consideration for the judge. The punishment is not meeted out as a 'balm to hurt mind.' Nor is there in the law aught of malice against him who is punished. The power is exercised by the court as the representative in this respect of the people—the ultimate sovereign—and in their interest and for their good. The maintenance of the authority of the judiciary is indispensable to the stability of the government. Having power over neither the purse nor the sword, it is helpless and defenseless, open to wanton insult, the object of universal derision and contempt, unless the people have, by necessary implication, vested in the judiciary authority to assert its powers, to compel respect and obedience to its orders and decrees, and to preserve order and decorum in open court, by calling upon the physical power of the state to uphold this independent department of the government in its full integrity. The people, by the very act of creating a judicial department necessarily vested in it this prerogative. This power to punish for contempt, which inheres in the very constitution of every court, is to be exercised solely for the public good, that a branch of the people's government may not lose its efficacy, and thus the government be brought to anarchy. But it does not at all follow that, because the state alone has any interest in the punishment or such a contempt, the power to punish it does not reside exclusively in the tribunal insulted or

defied. On the contrary, there has been only one thought touching this question. All the cases speak of this power as being lodged in only the tribunal towards which the contempt is directed." Rap. Contempt, 13, and cases cited.

In the case of *People* v. *Owens*, 8 Utah, 20, 28 Pac. Rep. 871, this court held that it would not review proceedings in contempt where the court below had jurisdiction. That there was nothing in our statutes allowing appeals in such cases, the rule of law being that each court judges for itself in cases of contempt and the judgment of the court is not a subject of review by an appellate court.

In the case of *People* v. *Welch*, 11 Nev. 187, the court says: "If the contempt consists in the refusal of a party to do something for the benefit or advantage of the opposite party which is ordered to be done, the process is civil and he stands committed until he complies with the order. The order in such cases is not punitive but coercive. If, on the other hand, the contempt consists in the doing of a *forbidden act* injurious to the opposite party, the process is criminal and conviction is followed by a penalty of fine or imprisonment, or both, which is purely punitive. In the former case the private party alone is interested in the enforcement of the order, and the moment he is satisfied, the imprisonment terminates; in the latter case the state alone is interested in the enforcement of the penalty. It is true the private party receives an incidental advantage from the infliction of the penalty, but it is the same sort of advantage precisely which accrues to the prosecuting witness in a case of assault and battery, the advantage being that the punishment operates *in terrorem*, and by that means has a tendency to prevent a repetition of the offense. The principle of distinction between the civil and criminal processes for contempt here indicated, though not expressly recognized in any of the cases that have fallen under our observation, is entirely consistent with all the decisions, and is the only

means of rendering them consistent with each other. It may, therefore, be considered established by them." Rapalje on Contempt, secs. 21 and 22.

In the case of *Hayes* v. *Fisher*, 102 U. S. 121, the court held that a proceeding in the court below for contempt cannot be re-examined in that court by an appeal or writ of error.

From an examination of the authorities, we are satisfied that under our statute an appeal does not lie in this court from the judgment and conviction attempted to be appealed from. *Phillips* v. *Welch*, 11 Nev. 187, 12 Nev. 158; Rapalje on Contempt, secs. 143, 141; *Hayes* v. *Fisher*, 102 U: S. 121; *New Orleans* v. *Steamship Co.*, 20 Wall, 387; *McMicken* v. *Perin*, 20 How. U. S. 133; *Clark* v. *People*, 12 Amer. Dec. 177 (Note 184); *Ex parte Martin*, 26 Amer. Dec. 276; *Williams' Case*, 67 Am. Dec. 376; *Easton* v. *State*, 87 Am. Dec. 408; *State* v. *Galloway*, 98 Am. Dec. 49; 2 Bishop C. L. (7th Ed.) sec. 268; *Ex parte Sweeny*, 18 Nev. 74; *In re Frederick*, 149 U. S. 89.

The petition for *habeas corpus* is denied, and the petitioner is remanded to the custody of the sheriff of Salt Lake county in compliance with the order, judgment and commitment of the third district court.

Bartch, J., concurred.

Smith, J., dissented.